THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES AMMONS *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 81—2871.

Opinion filed December 27, 1983.—Rehearing denied January 24, 1984.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Peter M. DeLongis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

After a joint jury trial, defendants, Charles Ammons and Audrey Malone, were each found guilty of one count of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2), two counts of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, pars. 12—4(a), (b)(1)), two counts of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11(2)), and one count of

attempt (murder) (Ill. Rev. Stat. 1979, ch. 38, par. 8—4). Defendants appeal raising the following issues: (I) whether the trial court erred in allowing the State's motion *in limine*; (II) whether defendants were denied a fair trial because of improper prosecutorial comments; (III) whether defendants' sentences for certain offenses should be vacated and a new sentencing hearing ordered because the improper convictions influenced the sentencing on the remaining convictions; and (IV) whether defendants' *mittimuses* should be corrected to properly reflect their sentences.

The charges against defendants stem from an incident which occurred on August 2, 1980, at the home of Gwendolyn Vaughn. According to the State's evidence, defendants entered Vaughn's apartment at approximately 7 p.m. and each drew a sawed-off shotgun. Present in the apartment were Vaughn, her four children and a teen-aged girl, Michele Dixon. Malone snatched Vaughn's baby from her arms and held the gun to the baby's head, saying she would blow his brains out. Ammons asked for money and when Vaughn replied that it was upstairs, he held the shotgun at Vaughn's head and forced her, the children and Dixon up the stairs.

Once in her bedroom, Ammons hit Vaughn on the head with the gun. Vaughn gave Ammons $15 in currency and $140 in food stamps which she kept under her mattress. Ammons kept asking for more money and beating Vaughn on her head, chest and arms with the gun. Malone repeatedly came in and out of the room, telling Ammons to kill the victims. After Vaughn told Ammons that she didn't have any more money, he shot her in her upper right thigh.

Ten days after the shooting, while in the hospital, two police officers showed Vaughn a group of photos from which she identified both defendants. At trial, Vaughn also made an in-court identification of both.

Michele Dixon testified that Ammons struck her in the head with the sawed-off shotgun he was holding while they were in the living room. A gun was pointed at her back while she was forced upstairs and then pushed to the floor by Ammons. Ammons was wearing a red sun visor, clear-lens glasses, a long white butcher jacket and had a moustache, beard and nappy black hair which came below his ears and looked like a wig. Malone was wearing a red scarf.

On August 12, Dixon was shown photos at her house by the police and, although she was shown a photo of Ammons, she was unable to identify him. At two lineups held the next day, she identified both defendants, as she also did in court.

The mother of Michele Dixon, Effie McCollum, who lived in

Vaughn's building, saw defendants on the day in question standing under her neighbor's porch. After they started up the stairs to Vaughn's apartment, McCollum spoke to them and they proceeded to walk down the street. Later, on the evening of August 2, 1980, she looked through police photos but was unable to identify any of the persons. She never viewed any lineups, but did identify both defendants at trial.

Among the defense witnesses was another of Vaughn's neighbors, Karen Brazille, whom the State had attempted to call as its witness. At an in-court lineup which the trial court held in order to test her ability to identify Malone, Brazille mistakenly took Malone's sister for Malone.

The jury returned a guilty verdict for both defendants on all of the following counts:

Count 1—armed robbery of Vaughn
Count 6—aggravated battery of Dixon
Count 11—aggravated battery of Vaughn
Count 13—home invasion, intentionally injuring Vaughn
Count 14—home invasion, intentionally injurying Dixon
Count 15—attempt murder of Vaughn

Because of certain discrepancies, the particulars of the oral sentencing orders and the subsequent *mittimuses* which were issued will be discussed below.

## I

Defendants' first trial for these offenses resulted in a hung jury. At the first trial, defendants' main theory of defense was that someone else, either Benny Browder or Larry Campbell,[1] committed the offenses. In essence, defendants argued that Campbell, who was once Vaughn's common-law husband, had Browder commit the offense as revenge against Vaughn for having another man's child while he was in the penitentiary. Campbell and Browder became acquainted while incarcerated together.

Before the second trial, the State presented a motion *in limine* requesting that defense counsel be prohibited from mentioning the convictions and incarceration of Larry Campbell, that the case had been tried before, or anything regarding the shotguns recovered by the police at Browder's apartment when they were questioning him about the crimes. The trial court granted the motion, subject to reconsideration if counsel had testimony to adduce at trial.

---

[1]Campbell is also referred to in the record as Larry Kimball.

Defendants claim that the granting of this motion *in limine*, as well as instances where the trial court sustained the State's objections to the defense's efforts to present important evidence, denied them the right to present their case. A motion *in limine* may not be used to deny a defendant the fundamental right to defend himself. (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 113, 390 N.E.2d 589.) It is within the discretion of the trial court to determine whether the rules of evidence require exclusion of evidence, and the court's decision will not be reversed unless there was an abuse of discretion. *People v. Williams* (1978), 60 Ill. App. 3d 529, 532-33, 377 N.E.2d 367, *appeal denied* (1978), 71 Ill. 2d 614.

■ We have examined the pertinent sections of the record cited by defendant and conclude that the trial court did not abuse its discretion. The trial court did not rule, contrary to defendants' contention, that they were prohibited from pursuing the relationship between Campbell and Browder; it ruled only that defense counsel was barred from introducing evidence of previous convictions. The trial court also granted the State's motion in regard to any reference to shotguns, which allegedly were full-length and were never tied to this crime, stating that the ruling was subject to re-opening during trial. After conducting a *voir dire* of Vaughn, the court ruled that her testimony regarding the defense's theory was not relevant, but that defense counsel had the option of recalling her if they could, at some later time, lay a basis for which her testimony would then become relevant. As far as the parties indicate, this was not done. After reviewing the record, we conclude that the trial court did not abuse its discretion and correctly ruled that the evidence, as presented to it, was neither relevant or admissible.

## II

Defendants claim that they were denied a fair trial because of numerous improper and prejudicial remarks by the prosecution in closing argument. It is well settled that the State may not resort to unfounded or inflammatory remarks in closing argument. *People v. Bryant* (1983), 94 Ill. 2d 514, 523, 447 N.E.2d 301.

The State maintains that defendants waived review of this issue because Malone did not file a post-trial motion and although Ammons did, it only generally alleged that he was "prejudiced by the remarks of the prosecutor."

■ This court has recently clarified what is necessary to preserve an issue for review. Not only must the comment be objected to at trial, but the error must be set forth with specificity in the post-trial

motion. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77.) A review of the hearing on Ammons' post-trial motion, however, reveals that defense counsel was able to point to specific instances of the alleged improper comments and the trial court had a chance to consider this issue, which is the purpose of a post-trial motion. This court will, therefore, review the issue.

Based on our review of the record, the most offensive of the comments complained of consisted of the following remarks by the prosecutor concerning defense counsel:

> "They work for money and they make more money than we do and for enough—I don't know how much, maybe not too much but they's sit there and go thru the same jirations [*sic*] to get John Wayne Gacy off the hook."

An objection was sustained and the prosecutor was admonished that the argument should be based upon the evidence.

There can be no doubt that these comments were improper, and as our court has just recently noted in several decisions, tactics such as these must not be resorted to. (See, *e.g., People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298.) Further, it has been recognized that the injection of the name of a mass murderer, in particular that of Gacy, is clearly improper. (*People v. Barnes* (1982), 107 Ill. App. 3d 262, 268-69, 437 N.E.2d 848, *appeal denied* (1982), 91 Ill. 2d 560.) It is still necessary, however, to prove that there is substantial prejudice to the accused. *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.

■ In this case, the objection to the statements was sustained and the jury was instructed that closing arguments are not evidence and argument not based on the evidence should be disregarded. As the United States Supreme Court recently articulated, "it is the reviewing court's duty to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations ***; [s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since by definition, the conviction would have been obtained notwithstanding the asserted error." (*United States v. Hasting* (1983), 461 U.S. 499, 509, 506, 76 L. Ed. 2d 96, 106, 104, 103 S. Ct. 1974, 1980, 1979.) We have examined the other prosecutorial comments complained of and find that, even considering their cumulative impact, these remarks did not result in substantial prejudice to defendants. The jury was adequately admonished by the trial court that argument not based on the evidence should be disregarded after each objection.

## III

Defendants next claim that they were improperly convicted and sentenced on several counts and thus they are entitled to a new sentencing hearing. *People v. Alejos* (1982), 104 Ill. app. 3d 414, 416, 432 N.E.2d 1046.

## A

### DEFENDANTS' DOUBLE CONVICTIONS OF HOME INVASION

Defendants urge that they should not have received convictions and sentences for two counts of home invasion. (Ill. Rev. Stat 1979, ch. 38, par. 12—11.) Count 13 alleged a home invasion with the intentional injury to Vaughn and count 14 a home invasion alleging an intentional injury to Dixon. Citing the one-act, one-crime doctrine enunciated in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, defendants contend that only one conviction for the one unlawful entry should be allowed.

It is well settled that in construing statutory enactments, it is a court's duty to ascertain legislative intent; if such intent is clear from the language of the statute, there is no need for construction. (*People v. Rogers* (1980), 86 Ill. App. 3d 1092, 1093-94, 408 N.E.2d 769.) Consideration in determining legislative intent must not only focus on the language used, but also the evil to be remedied. *People v. Taylor* (1976), 35 Ill. App. 3d 418, 421, 342 N.E.2d 96.

■ Keeping in mind that the thrust of the home-invasion statute is to protect the safety of persons in their homes (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 447, 432 N.E.2d 1074, *appeal denied* (1982), 91 Ill. 2d 564), we interpret the plain meaning of the statute to be that one count of home invasion occurs as a result of one unauthorized entry of one person's dwelling, irregardless of the number of persons present or harmed. Under subsection (1), there must be a threat with a dangerous weapon to *any person or persons*, or (2), intentional injury to *any person or persons*. This language can be contrasted with other statutes, *e.g.*, battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—3), where the conduct is phrased as against *an individual*, meaning that there can be a separate count for every individual involved.

Because the wording of the statute indicates a legislative intent to impose one count of home invasion for one unlawful entry of one dwelling, defendants' convictions and sentences for count 14 must be vacated.

## B

### DEFENDANTS' CONVICTIONS OF ATTEMPT MURDER

■ Both defendants argue that their convictions and sentences for the attempt murder of Vaughn (count 15) be vacated because it is based upon the same act which is used in the home invasion count—the shooting of Vaughn (count 13). This argument must fail, however, because an examination of the elements needed for home invasion and attempt murder reveals that home invasion requires the additional act of unlawful entry, which is not required in attempt murder. See *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, *appeal denied* (1982), 91 Ill. 2d 579.

## C

### MALONE'S CONVICTION OF ATTEMPT MURDER OF DIXON

As the State concedes, the trial court erroneously declared at the sentencing hearing that Malone was sentenced to 10 years' imprisonment on the charge of attempt murder of Dixon, an offense for which she was never indicted. The parties agree that the court perhaps meant to announce the sentence of 10 years for home invasion based upon injury to Dixon, which we are now vacating in this decision.

## D

### NEW SENTENCING HEARING

■ Both defendants request that a new sentencing hearing be conducted because it cannot be determined whether the improper sentences and convictions influenced the trial court's sentences on the remaining convictions. *People v. Hert* (1981), 95 Ill. App. 3d 871, 874, 420 N.E.2d 813.

We have concluded that the only convictions to be vacated are for one count of home invasion, count 14, for each defendant. Another count of home invasion, one count of armed robbery, one count of attempt murder and one count of aggravated battery all remain. This situation can be contrasted with the one in *Hert*, where the appellate court reversed two of four counts. Also, as it has been recognized, where the trial court has considered multiple offenses separately and sentenced each count individually (as here), the trial court avoids any alleged taint of an invalid conviction. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 891, 439 N.E.2d 1011.) In this case, therefore, a new sentencing hearing is not required.

## IV

Because of apparent clerical errors, both defendants' *mittimuses* do not correctly reflect the sentences given them; therefore, they must be corrected. (*People v. Thompson* (1977), 51 Ill. App. 3d 447, 450, 366 N.E.2d 1009, *appeal denied* (1977), 66 Ill. 2d 635.) We note that in announcing defendants' sentences, the trial court stated that the aggravated battery of Vaughn charge (count 11) was merged with the attempt murder of Vaughn count (count 15), yet both defendants' *mittimuses* reflect sentences for count 11. The *mittimuses* must be corrected in this regard, as well as to make them conform with our decision. Therefore, defendants' respective *mittimuses* should read:

|  |  | Malone | Ammons |
|---|---|---|---|
| Count 1 - | armed robbery of Vaughn | 10 years | 20 years |
| Count 6 - | aggravated battery of Dixon | 5 years | 5 years |
| Count 11 - | aggravated battery of Vaughn, vacated | -------- | -------- |
| Count 13 - | home invasion | 10 years | 20 years |
| Count 14 - | home invasion, vacated | ------- | ------- |
| Count 15 - | attempt murder of Vaughn | 10 years | 20 years |

Each count is to run concurrently with each other.

For the reasons stated above, the convictions and sentences on all counts except count 14 are affirmed; the convictions and sentences on count 14 are hereby vacated; and defendants' *mittimuses* are to be corrected as set forth herein.

STAMOS and PERLIN, JJ., concur.