THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARMICHAEL MORRISON, a/k/a James Ivory, *et al.*, Defendants-Appellants.

First District (1st Division) Nos. 82—0984, 82—1038, 82—1086 cons.

Opinion filed August 19, 1985.—Rehearing denied November 5, 1985.

172

Richard E. Gorman, of Chicago, for appellant Carmichael Morrison.

James J. Doherty, Public Defender, of Chicago (Thomas P. Marnell and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant Edward Stokes.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant Tommie Newton.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and Karen C. Wirth, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a joint jury trial, defendants Carmichael Morrison, Tommie Newton and Edward Stokes, each represented by separate counsel, were convicted of seven counts of home invasion and six counts of attempted armed robbery. (Ill. Rev. Stat. 1981, ch. 38, pars. 12—11 and 8—4, respectively.) Morrison was sentenced to concurrent extended terms of 50 years for home invasion and 25 years for attempted armed robbery; Newton was sentenced to concurrent terms of 14 years for each offense; and Stokes was sentenced to concurrent terms of 22 years for home invasion and 14 years for attempted armed robbery. On appeal, defendants, individually or jointly, contend that: (1) they were erroneously charged, convicted and sentenced on multiple counts of home invasion and attempted armed robbery; (2) the conviction and

sentence for attempted armed robbery must be vacated as a lesser included offense of home invasion; (3) the trial court erred in reading defendant Morrison's aliases to the jury prior to *voir dire* and in permitting the State to refer to the aliases at trial; (4) the State failed to prove all of the elements of home invasion beyond a reasonable doubt; (5) they were prejudiced by the State's withholding of evidence favorable to defendants; (6) the State's offer to stipulate to police reports at trial severely prejudiced the defense; (7) they were denied effective assistance of counsel; (8) the trial court erred in failing to hold an evidentiary hearing on defendant's motion for a new trial; (9) the trial court improperly tried and sentenced defendant Newton *in absentia*; (10) the State's improper remarks during closing argument substantially prejudiced defendants; (11) the trial court's erroneous oral jury instructions for both offenses constituted reversible error; and (12) the trial court erred in sentencing defendant Morrison to extended-term sentences. For the reasons stated herein, we affirm in part, vacate in part and remand for resentencing as to all defendants on the offense of home invasion.

The charges against defendants stem from an incident which occurred at approximately 11 p.m. on October 23, 1981, at the apartment of Delvey, Arnearry, Tyronne and Felisia Smith, located in Chicago. According to the State's evidence, the Smiths, Maria Morris, Rocky Hunter and Milton Lee were present in the Smiths' third-floor apartment when defendant Newton buzzed the apartment's intercom and asked for Delvey Smith. Delvey told his brother, Tyronne, to ''buzz'' Newton into the building and then he left the apartment to meet her on the third-floor landing so as to avoid a confrontation between Newton and Maria Morris, Delvey's fiancee. When Delvey met Newton on the third-floor landing, he saw defendant Morrison coming up the stairs with a gun aimed at him. Defendant Stokes, also armed, followed immediately behind Morrison. Stokes swung at Delvey with his gun but missed him because Delvey knelt down and covered his head with his hands. While Delvey was in this position, one of the three defendants searched his pockets and took $300 in cash. At gunpoint, defendants ordered Delvey to knock on his apartment door. Rocky Hunter opened the door and defendants rushed in, shouting ''Police,'' and pushing Delvey into the living room with the others.

In the living room, Stokes held Tyronne, Arnearry, Delvey, Rocky Hunter and Milton Lee at gunpoint and ordered them to remove their jewelry and put it on the glass top coffee table. Meanwhile, Morrison and Newton walked to the back of the apartment, where Felisia Smith was washing dishes, and ordered her to join the others in the living

room and to remove her jewelry. When Hunter removed his watch and dropped it onto the table, it caused a loud noise which momentarily distracted Stokes. At that instant, Arnearry jumped Stokes, who reacted by firing his gun twice in the direction of the couch. No one was hit. Morrison heard the commotion in the living room and came around the corner, aiming his gun in the general direction of the victims. Tyronne then jumped up and grabbed Morrison's wrists, wrestled him to the ground and managed to take possession of the gun. Once disarmed, Morrison attempted to leave the apartment, but was followed down the building stairs into the vestibule by Tyronne, where the fight continued.

Felisia Smith had entered the living room area just as Arnearry leaped toward Stokes. In the resulting confusion, she ran out of the apartment to her boyfriend's house.

Prior to the struggle over the guns, Maria Morris, who had been in the bathroom at the time defendants entered the apartment, had opened the bathroom door when she heard voices and was confronted by Morrison, pointing a gun in her face. He told her to stay in the bathroom. Shortly thereafter, Newton opened the bathroom door and told Maria to get out and go into the living room with the others. As Maria was walking toward the living room, she heard two shots, and ran out of the apartment toward Felisia's boyfriend's house.

Officer Michael Grymes of the Chicago Police Department testified that on the night in question, he and his partner responded to a radio message of a man with guns on South Essex in Chicago. When they arrived on the scene, Grymes observed Tyronne Smith and Morrison in the apartment vestibule. Tyronne was holding a gun and Morrison was on the floor. Grymes also observed two men struggling in the window of a third-floor apartment in the same building. Grymes and his partner entered the vestibule with guns drawn and told Tyronne to drop the gun. Tyronne handed him the gun and told Grymes that he was not the "one," but that Morrison had been trying to rob him. Meanwhile, Chicago police officers McGavock and Williams arrived and proceeded to the third-floor apartment.

Officer McGavock testified that on October 23, 1981, while responding to a radio message of a woman calling for help, he and his partner saw Felisia Smith running eastbound in the 770 block of Kingston, apparently in a hysterical state, wearing a bathrobe and no shoes. The officers followed Felisia to a nearby apartment, where they talked to her, then proceeded to 7707 South Essex, where they saw Maria Morris standing in the street. When Officer McGavock and his partner entered the building, they observed two males in the building vestibule

with Officer Grymes and his partner. McGavock then proceeded to the Smiths' third-floor apartment, where he saw Delvey Smith and Stokes struggling in the living room near the front window. Stokes was holding a gun and Delvey was holding Stokes' wrist. McGavock took the gun from Stokes and made a protective pat-down search.

In contradiction to the State's evidence, defendant Stokes testified that on October 23, 1981, he, Newton, and Morrison went to Delvey Smith's apartment to purchase cocaine. When Delvey opened the lobby door of the apartment, Stokes informed him that they had a diamond cluster ring and $450 in cash with which to make the drug purchase. Defendants and Delvey then proceeded upstairs to the Smiths' apartment to complete the transaction. Milton Lee, Rocky Hunter, Arnearry and Tyronne Smith were in the Smiths' apartment at the time.

While Stokes was sitting in the living room, he heard Delvey and Morrison arguing about the payment in another room. When they began to "tussle" with each other, Milton Lee and Arnearry jumped up and ran into the other room. Stokes attempted to leave the apartment, but Arnearry struck him on the head with a gun. Stokes then grabbed for the gun and began struggling with three or four people, all of whom were trying to force him to release the gun. Stokes denied hearing any gunshots during the struggle and further denied that either he or the other defendants were armed with guns when they entered the Smiths' apartment.

On the third day of trial, following the testimony of the State's first witness, the court excused the jury and admonished defendant Newton, who was the only defendant out on bond, that if she failed to appear for court at any time, she would be tried and sentenced *in absentia*. Newton acknowledged that she understood the court's admonishment. When trial resumed on the fourth day, defendant Newton was present. At the conclusion of that day's proceedings, the court informed all those present, including defendant Newton, that trial would resume the following day (Friday) at 11 a.m. When defendant Newton failed to appear by noon the next day, and her counsel was unable to contact her, the court excused the jury for lunch and discussed with all counsel the procedure for proceeding with trial *in absentia*. The court also informed counsel for Newton that if Newton did not appear when trial resumed following lunch recess, he would advise the jury that the trial would commence on the following Monday *in absentia*. All counsel indicated that they understood the procedure. When defendant Newton failed to appear following lunch recess, the court admonished the jury as to the provisions of the Criminal Code of 1961 regarding the wilful absence of a defendant at trial and continued the proceedings to 9:30

a.m. on the following Monday. When defendant Newton failed to appear on Monday, trial resumed *in absentia* and was concluded the following day. Newton also failed to appear at the sentencing hearing.

Defendants Newton and Morrison first contend that it was reversible error to charge, convict and sentence them for seven counts of home invasion when there had been only one entry. Similarly, defendants argue that it was reversible error to carve six counts of attempted armed robbery out of a single act. In response, the State argues that defendants waived these issues by failing to object to the number of counts either at trial or in their post-trial motions.

■ As a general rule, failure to object at trial or in a post-trial motion acts as a waiver to raising the issue on appeal. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) However, the waiver rule is not absolute. Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)) provides for relaxation of the rule when error has occurred which acts to prejudice substantial rights of the defendant. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) We find such an error exists with respect to the multiple counts of home invasion.

The identical issue regarding home invasion was addressed recently by this court in *People v. Ammons* (1983), 120 Ill. App. 3d 855, 458 N.E.2d 1031, which we find dispositive. In *Ammons*, defendants entered an apartment in which six people were present, including four children. Defendants were charged, convicted and sentenced on two counts of home invasion, each count alleging an intentional injury to a different person. In vacating one of the two counts, the *Ammons* court stated:

> "Under subsection (1) [of the home invasion statute], there must be a threat with a dangerous weapon to *any person or persons*, or (2) intentional injury to *any person or persons*. This language can be contrasted with other statutes, *e.g.*, battery [citation], where the conduct is phrased as against *an individual*, meaning that there can be a separate count for every individual involved.
>
> Because the wording of the statute indicates a legislative intent to impose one count of home invasion for one unlawful entry of one dwelling, defendants' convictions and sentences for [one of the counts] must be vacated." 120 Ill. App. 3d 855, 861.

Adopting the rationale of *Ammons*, we conclude that defendants' convictions and sentences for six of the seven counts of home invasion must be vacated. In reaching this conclusion, we note that *People v. Hert* (1981), 95 Ill. App. 3d 871, 420 N.E.2d 813, relied upon by the State, is factually distinguishable. In *Hert*, defendant's convictions of two counts of home invasion against two individuals were upheld on

the grounds that defendant unlawfully entered two separate homes.

■ Regarding defendants' contention that five of the six counts of attempted armed robbery must be vacated, we disagree and uphold the convictions on all counts.

A person commits a robbery when "he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1981, ch. 38, par. 18—1(a).) In the present case, defendants used force or the threat of force to cause six individual persons to part with possession of personal property within their individual control. The fact that each victim was not approached individually is irrelevant. The relevance lies in the fact that there were six separate "takings." (*People v. Pittman* (1984), 126 Ill. App. 3d 586, 467 N.E.2d 918; *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285). Contrary to defendants' contention, there was not one robbery of several victims as in *People v. Palmer* (1982), 111 Ill. App. 3d 800, 468 N.E.2d 1285, where defendant robbed a cash register which was in the joint control of two individuals. Instead, defendants attempted to take property which was in the control of six individuals.

■ Defendant further argues that the convictions and sentences for attempted armed robbery must be vacated because the offense is predicated upon the same act used to support the home invasion conviction. We disagree. Home invasion requires the additional element of unlawful entry. Thus, attempted armed robbery is not by definition a lesser included offense. See *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, *appeal denied* (1982), 91 Ill. 2d 579.

■ Defendants further request that in the event counts for either or both offenses are vacated, the entire cause be remanded for resentencing. Upon review of the record, we are not persuaded that the trial court was influenced by the home invasion conviction when it sentenced defendants on the attempted armed robbery convictions. Therefore, we find no reason to remand for resentencing on the attempted armed robbery convictions. (*People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5). However, we do find that the total number of counts of home invasion may have influenced the court in imposing its sentence on the home invasion offense. (*People v. Walton* (1981), 94 Ill. App. 3d 903, 419 N.E.2d 495). Thus, in light of the fact that we are vacating six of the seven counts of home invasion, we remand for resentencing as to all defendants on the conviction for home invasion only.

■ Defendants Morrison and Newton next contend that it was prejudicial error for the trial court to read defendant Morrison's aliases to the jury prior to *voir dire* and for the State to refer to these aliases

during trial. We decline to address this issue on the grounds that it has been waived for review by defendant's failure to raise the issue below either by objection or in a post-trial motion (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77), and we do not find that the remarks complained of constitute plain error.

■ Defendant Newton next contends that defendants were not convicted beyond a reasonable doubt. Specifically, with respect to the home invasion conviction, defendant Newton alleges that the State failed to prove that: (1) defendants were not police officers acting in the line of duty; and (2) they entered the premises without authority. We reject defendant Newton's contention and find *People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838, dispositive of the issue.

In *Davis*, defendant was tried and convicted of rape, home invasion and burglary. On appeal, defendant argued that the State failed to prove beyond a reasonable doubt that he was not a "peace officer acting in the line of duty." (106 Ill. App. 3d 260, 265.) Upon reviewing the evidence, the court concluded that although no direct evidence had been adduced at trial as to defendant's status of a peace officer, there was "sufficient circumstantial evidence contained in the record to establish beyond a reasonable doubt that he was not 'acting in the line of duty.' " (106 Ill. App. 3d 260, 266.) Similarly, in the case at bar, the circumstantial evidence established beyond a reasonable doubt that the defendants entered the Smiths' apartment without authority and that none of the defendants was acting as a peace officer in the line of duty. The record indicates that approximately 11 p.m. on October 23, 1981, defendant Newton, accompanied by defendants Morrison and Stokes, went to the Smiths' apartment to see Delvey Smith. Delvey did not want Newton to enter the apartment; thus, he met her on the third-floor landing. At the time Delvey left his apartment, he did not know that Morrison and Stokes were with Newton. As Newton approached the third-floor landing, Delvey saw Morrison standing directly behind Newton, holding a gun. He then saw Stokes who swung at Delvey with a gun and missed. One of the three defendants then took $300 cash from Delvey's pocket. The defendants held Delvey at gunpoint and knocked on the Smiths' apartment door. When Rocky Hunter opened the door, defendants burst in, shouting "Police," and at gunpoint, ordered everyone into the living room and told them to remove their jewelry. We find that the evidence as to the foregoing events provides sufficient circumstantial evidence to establish beyond a reasonable doubt that defendants were not peace officers acting in the line of duty and did not have authority to enter the Smiths' apartment.

■ With respect to the attempted armed robbery conviction,

defendant Newton claims that the State failed to prove that any of the defendants were armed with a dangerous weapon. At trial, Officer Grymes testified that when he and his partner arrived at the Smiths' apartment building, they observed defendant Morrison crouched in the vestibule and Tyronne Smith standing over him with a gun. When Grymes asked for the weapon, Tryonne gave it to him and told him that he was not the "one," but that Morrison had tried to rob him. Officer McGavock testified that when he entered the Smiths' apartment, he saw Stokes and Delvey struggling over a gun which Stokes was holding. At trial, six witnesses testified that Morrison and Stokes were armed with handguns. In addition, testimony indicated that when Newton entered the apartment, she picked up a "burglar bar" and an ironing appliance which she held as she walked through the apartment toward the kitchen. At trial, defendant Stokes denied that any of the defendants had been armed. The jury heard the conflicting evidence as to whether defendants had been armed with dangerous weapons, were instructed by the court as to the elements necessary to sustain a conviction of attempted armed robbery, and were further instructed as to the offense of accountability. It is well established that it is the function of the jury to determine the credibility of the witnesses, to weigh the evidence, to draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) Upon review of the record, we find the evidence supports the jury's verdict, and, accordingly, reject Newton's contention.

 ■ Defendants Morrison and Newton next argue that they were denied their right to a fair trial by the State's withholding of evidence favorable to the defense. Specifically, defendants refer to the State's failure to obtain notes from Officer Grymes and from some unknown detectives who allegedly spoke with State's witness Milton Lee, and the State's failure to obtain the results of tests performed on the handguns recovered at the Smith apartment. We find defendants' contention unpersuasive on the ground that the record is void of any evidence that such notes or test results were ever in existence. See *People v. Allen* (1970), 47 Ill. 2d 57, 264 N.E.2d 184.

 ■ Defendants Newton and Stokes next argue that their convictions should be reversed as a result of the State's highly prejudicial repeated offers made in the presence of the jury to stipulate to the contents of the police reports. Defendants claim that the State's comments gave the appearance to the jury that defendants were trying to hide unfavorable evidence.

 Although the practice of offering to stipulate to inadmissible evidence before the jury has been held to be improper (*People v. Hovanec*

(1976), 40 Ill. App. 3d 15, 351 N.E.2d 402), we do not find that the State's comments in the case at bar constitute reversible error. Following the State's first offer to stipulate, the trial court sustained defendant's objection and admonished the jury that "police reports are not ordinarily admissible." When the State repeated the offer and alluded to it in rebuttal, the trial court refused the offer and, in denying a motion or mistrial, reminded defense counsel that the jury had "already [been] instructed *** relative thereto." Additionally, in its instructions to the jury, the court explained the purpose and effect of objections, stating, "You should not hold [objections] against either side, *** or think or feel that either side is trying to keep something from you." Accordingly, we conclude that any error attributed to the State's offers to stipulate was cured by the prompt action of the trial court in sustaining defendant's objections at trial, admonishing the jury during trial, and instructing the jury as to the purpose and effect of objections.

 Next, defendants Morrison and Newton argue that they were deprived of their sixth amendment right to the effective assistance of counsel. In addition, defendant Morrison maintains that the trial court erred in failing to hold an evidentiary hearing on his motion for a new trial when he specifically alleged ineffective assistance of counsel therein.

It is well established that in order to establish incompetence of counsel, "a defendant must show (1) that counsel committed errors 'so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment,' and (2) that those errors, in fact, were prejudicial to his defense." (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In determining competency of counsel, the reviewing court examines the totality of counsel's conduct at trial with the exception of those areas involving the exercise of judgment, discretion or trial tactics. *People v. Moore* (1981), 102 Ill. App. 3d 651, 429 N.E.2d 1312.

Upon reviewing the record with respect to the numerous allegations of ineffective assistance of counsel enumerated by defendants Newton and Morrison, we conclude that both defendants were afforded competent and effective representation of counsel throughout the trial and at the sentencing hearing. Each counsel presented comprehensive opening and closing arguments on behalf of his client, conducted extensive cross-examination, made numerous timely objections at trial, and argued vigorously at the sentencing hearing in mitigation. Based on the conduct of both counsels during trial and at the sentencing hearing,

and the fact that defendants failed to show that the outcome of the trial would have been different but for the representation of the defense counsels, we conclude that defendants were not deprived of effective assistance of counsel. Further, based upon the lack of evidence of incompetency before the court, neither do we find that the trial court erred in failing to hold an evidentiary hearing on defendant Morrison's motion for a new trial.

■■■ Next, defendants Newton and Morrison contend that the trial court improperly tried and sentenced defendant Newton *in absentia,* thereby denying defendant Newton her due process rights and causing substantial prejudice to her codefendants.

Section 115—4.1 of the Code of Criminal Procedure of 1963 states, in pertinent part:

"(a) \*\*\* If trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial.

\* \* \*

(c) \*\*\* Upon a verdict of guilty, the court shall set a date for the hearing of post-trial motions and shall hear such motion in the absence of the defendant. If post-trial motions are denied, the court shall proceed to conduct a sentencing hearing and to impose a sentence upon the defendant.

\* \* \*

(e) When a defendant who in his absence has been either convicted or sentenced or both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control." (Ill. Rev. Stat. 1981, ch. 38, par. 115—4.1.)

Conduct performed "willfully," as the term is used in the aforementioned section, is defined in the Criminal Code of 1961 as synonymous with "[c]onduct performed knowingly or with knowledge." Ill. Rev. Stat. 1981, ch. 38, par. 4—5(b).

In the present case, during trial the court admonished defendant Newton as to her obligation to be present at trial and the ramifications of her absence. In addition, at the conclusion of the fourth day of trial, the last day at which defendant Newton was in attendance, the court explicitly stated that trial would resume the following day (Friday) at 11 a.m. When defendant Newton failed to appear, pursuant to statute, the court recessed trial until the following Monday and instructed the jury that if defendant Newton did not appear on Monday, the trial would resume in her absence.

Defendants argue that: (1) the court never instructed defendant Newton to appear for any further proceedings after the fourth day of trial; (2) the State failed to clearly show that defendant had voluntarily absented herself; and (3) the court prejudiced all defendants by its admonishment to the jury regarding defendant Newton's absence. We disagree.

First, the record clearly belies defendants' allegations that Newton was not informed that she must appear at the trial proceedings. Newton received a specific admonishment as to her attendance obligations on the third day of trial, and was present on the fourth day when the court advised everyone present that the proceedings would continue the following day. Second, once trial has commenced, there is no statutory or common law obligation for the State to establish that a defendant's absence from the proceedings is wilful.

We further conclude that none of the defendants was prejudiced by the court's admonishment to the jury regarding Newton's absence. In fact, the trial court protected Newton's right to a fair trial by advising the jury that although she was not present, she was represented by counsel. (See *People v. Gary* (1976), 42 Ill. App. 3d 357, 356 N.E.2d 135). In addition, this court has held that where there is no evidence of antagonistic defenses and the jury is cautioned to regard each defendant separately, the mere absence of a codefendant and any reference thereto does not necessarily result in prejudice to the remaining defendants absent proof beyond mere speculation. (*People v. Johnson* (1979), 74 Ill. App. 3d 1037, 393 N.E.2d 40). In the present case, there is no indication of antagonistic defenses, and the court properly instructed the jury to give separate consideration to each of the defendants. Therefore, we find that no prejudice resulted to defendants as the result of defendant Newton's absence at trial.

■■ Finally, because defendant Newton failed to establish that her failure to appear in court was both without her fault and due to circumstances beyond her control, she was not improperly denied a new trial or new sentencing hearing as a result of the *in absentia* proceedings. (Ill. Rev. Stat. 1981, ch. 38, par. 115—4.1(e).) In fact, defendant Newton's sole excuse for not being present at trial is the court's alleged failure to inform her of the necessity to do so. As discussed, this allegation is not supported by the record.

■■ Defendants Morrison, Newton and Stokes next claim that they were denied a fair trial because of numerous improper and prejudicial remarks made by the prosecution in closing argument. Specifically, defendants state that the prosecution improperly accused defendants of hiding evidence; referred to defense counsel's "cheap tricks,"

"dramatics," and attempts to "detract," "confuse," and "insult" the jury; characterized the defense as one of "conspiracy and persecution"; and referred to defendant Newton's absence as indicative of her guilt.

It is well settled that great latitude is afforded a prosecutor during closing argument (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847), and that the propriety of the prosecution's remarks is generally left to the discretion of the trial court, which determination shall be followed absent a showing of abuse of discretion. (*People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.) In closing argument, the prosecution may base its argument on the evidence presented or reasonable inferences therefrom (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840); respond to those comments by defense counsel which clearly invite or provoke a response (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671); comment on the credibility of the defense witnesses (*People v. Roman* (1981), 98 Ill. App. 3d 703, 424 N.E.2d 794); denounce the activities of defendants and urge that justice be administered (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608); highlight inconsistencies in defendant's argument (*People v. Washington* (1981), 101 Ill. App. 3d 409, 428 N.E.2d 553); and comment on defendant's absence at trial (*People v. Zielinski* (1979), 77 Ill. App. 3d 157, 395 N.E.2d 1020). Further, improper remarks not objected to at trial or specifically raised in a post-trial motion are deemed waived on appeal. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.

In the case at bar, we have carefully reviewed the arguments in their entirety, with particular attention to those comments of which defendants complain, and conclude that the prosecution's comments were either waived by defendants' failure to timely object, were within the bounds of proper closing argument or, if improper, in light of the overwhelming evidence of defendants' guilt, did not constitute a material factor in their conviction. *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482.

Defendants Newton and Morrison next argue that the trial court committed reversible error when it misstated the jury instructions for both offenses. As a result of defendants' failure to raise the issue of jury instructions either during trial or in their post-trial motions, we find that they have waived consideration of any alleged errors on review. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.) Furthermore, due to the fact that the alleged error as to the attempted armed robbery instructions were merely the court reporter's typographical error, which was subsequently corrected in a supplemental record, and the alleged error as to the instructions for

home invasion was cured by the instructions as a whole (*People v. Dowd* (1981), 101 Ill. App. 3d 830, 428 N.E.2d 894), we consider any error to have been harmless. *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

■■■ Finally, defendant Morrison contends that the trial court erred in sentencing him to concurrent extended terms of 50 years for home invasion and 25 years for attempted armed robbery. Morrison claims that he was not the "main moving party" of the crimes, had never been convicted of a Class X felony, and his conduct had not been accompanied by brutal or heinous behavior indicative of wanton cruelty. The State asserts that defendant waived this issue on appeal by failing to object at trial to the imposition of an extended-term sentence and by failing to raise the issue in his post-trial motion. In the alternative, the State further asserts that the record supports the court's decision to impose extended terms.

We concur with the State's argument. By failing to timely object to the extended-term sentence at trial or in the post-trial motion, defendant waived the issue for review. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.) We further note that absent an abuse of discretion by the trial court, a sentence may not be altered on review. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370.) In the case at bar, we find that the trial court had sufficient informational and legal bases to support the imposition of extended-term sentences where the court found that the offenses were accompanied by exceptionally heinous and brutal behavior and the trial court considered the presentence investigation report and defense counsel's argument in mitigation. *People v. Jones* (1983), 119 Ill. App. 3d 615, 456 N.E.2d 926.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to one count of home invasion and six counts of attempted armed robbery, vacated as to six counts of home invasion, and remanded for resentencing of the home invasion conviction as to all defendants.

Judgment affirmed in part; vacated in part; and remanded for resentencing of the home invasion conviction.

BUCKLEY, P.J., and McGLOON, J., concur.