THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HERNANDEZ, Defendant-Appellant.

First District (1st Division) No. 1—87—2748

Supplemental opinion filed September 6, 1994.

430

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon, and Tamara Loury, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the supplemental opinion of the court:

Defendant William Hernandez, along with codefendant Antonio Silvas, was charged by indictment with murder, two counts of attempted murder, armed violence and aggravated battery. Silvas entered pleas of guilty to murder and attempted murder. Following a jury trial, Hernandez was convicted of all charges and was sentenced to 40 years' imprisonment for murder to be served consecutively with two 30-year concurrent attempted murder counts. Defendant appealed.

On appeal, this court remanded defendant's cause for a *Batson* hearing and retained jurisdiction to review the trial court's decision following that hearing and to consider the other issues raised but not decided.

Following remand, the trial court found that defendant had presented a *prima facie* case of race discrimination in jury selection; however, the court determined that the State presented racially neutral reasons for its use of peremptory challenges. (*People v. Hernandez* (1991), 220 Ill. App. 3d 715, 581 N.E.2d 258.) Defendant appealed the trial court's remanded finding. We affirmed the trial court's decision in a summary order pursuant to Supreme Court Rules 23(c)(5) and (c)(8). Official Reports Advance Sheet No. 15 (July 20, 1994), Rules 23(c)(5), (c)(8), eff. July 1, 1994.

This appeal addresses the remaining issues not addressed in the first appeal. A detailed summary of the facts in this case was presented in our original opinion; therefore, we do not repeat them here.

Defendant first argues that the trial court erred in denying his motion to suppress statements. He maintains that his statements were not voluntarily given, that no juvenile officer or adult family member was present at the time he gave the inculpatory statement and that he was physically abused.

A reviewing court cannot disturb a trial court's ruling on a motion to suppress a defendant's statement or confession unless it is against the manifest weight of the evidence (*People v. Brown* (1989), 182 Ill. App. 3d 1046, 538 N.E.2d 909; *People v. Davis* (1983), 97 Ill. 2d

1, 452 N.E.2d 525) or manifestly erroneous (*People v. Winters* (1983), 97 Ill. 2d 151, 454 N.E.2d 299).

■ The test of whether a confession was admissible at trial is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether defendant's will was overcome when he made the statement. (*People v. Patterson* (1992), 154 Ill. 2d 414, 610 N.E.2d 16.) In making this determination, the court must look at the totality of the relevant circumstances surrounding the making of the statement, including the existence of any threats, promises, or physical coercion, the length and intensity of the interrogation; and the age, intelligence, experience and physical condition of the defendant. (*People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334.) The mere assertion that a confession was obtained by duress does not mandate its exclusion. Rather, the issue becomes one of fact for the trial court to resolve. (*People v. Fickett* (1990), 204 Ill. App. 3d 220, 562 N.E.2d 238.) Where defendant is a juvenile, the utmost care must be taken to insure that the confession was voluntary and not coerced. *In re Shutters* (1977), 56 Ill. App. 3d 184, 187, 370 N.E.2d 1225.

All officers who testified in this case, including Officer Miller, who was the alleged perpetrator, denied that defendant was physically abused or threatened. Further, there is no evidence in the record that defendant suffered any swelling, bruises or injuries. Although the defendant and three other participants in the lineup testified that Officer Miller physically abused defendant, the court found their testimony incredible.

■ On a motion to suppress, it is the function of the trial court, not this court, to determine the credibility of the witnesses and the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) Therefore, we cannot say that the trial court's determination was against the manifest weight of the evidence.

Defendant further argues that because there was no parent or juvenile officer present at the time he was questioned, any incriminatory statements that he made were inadmissible pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—14 (West 1992)). The statute requires the law enforcement officer who takes a minor into custody without a warrant to immediately make a reasonable attempt to notify the parent or other person legally responsible for the minor's care that the minor is in custody, and also to notify the nearest juvenile officer. The State contends that the Act does not apply.

■ While there is persuasive authority that the Juvenile Court Act applies to the instant case (*People v. McGhee* (1987), 154 Ill. App. 3d 232, 507 N.E.2d 33; *People v. Cole* (1988), 168 Ill. App. 3d 172, 522 N.E.2d 635; *People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654), a juvenile does not have a *per se* right in Illinois to consult with a parent before questioning or to have a parent present during questioning. (*People v. Brown* (1989), 182 Ill. App. 3d 1046, 538 N.E.2d 909; *In re S.D.S.* (1982), 103 Ill. App. 3d 1008, 431 N.E.2d 759, *cert. denied* (1982), 459 U.S. 869, 74 L. Ed. 2d 128, 103 S. Ct. 153.) Further, the presence or absence of a parent is only one factor to be considered in evaluating the voluntariness of a statement or confession. (*Brown*, 182 Ill. App. 3d at 1052.) The court must consider the totality of the circumstances surrounding the making of the statement, including the existence of any threats, promises, or physical coercion, the length and intensity of the interrogation, and the age, intelligence, experience, and physical condition of the defendant. *People v. Green* (1988), 179 Ill. App. 3d 1, 535 N.E.2d 413.

In this case, Officer Miller testified that at about 1 p.m. on September 22, 1985, he went to the home of defendant's uncle to talk with defendant. Miller stated that the uncle did not know defendant's whereabouts and told him "if you find him, he's yours." Miller testified that he did not make any further attempts to contact defendant's uncle or his mother. Miller later saw defendant at the corner of 23rd Street and Marshall Boulevard, and he asked him to come to the station to view a lineup of suspects in the Esquivel shooting. Defendant stated that he went to the station, where he was placed in a small room behind locked doors and not allowed to leave. He also testified that he never asked to speak to his mother or guardian or anyone else. Later he was questioned regarding the Valdez murder.

While we find that the evidence here sufficiently supports the conclusion that no parent, guardian or juvenile officer was present at the time defendant was initially questioned, we do not require a reversal of the trial court's decision. Defendant was repeatedly advised of his *Miranda* rights and he repeatedly acknowledged that he understood them. The duration of defendant's time in custody was not brief; however, he was not questioned more than three times. The evidence in the record demonstrates that each interrogation lasted about 15 minutes. We do not believe that these encounters amounted to intense interrogation. Although defendant was 16 years old at the time of the incident, the record does not reveal that he was other than intelligent and in good physical condition.

Defendant relies on *People v. McGhee* (1987), 154 Ill. App. 3d 232, 507 N.E.2d 33, for the proposition that the statement he gave should

have been suppressed. Where defendant is a juvenile, the utmost care must be taken to insure that the confession is voluntary and not coerced. *In re Shutters* (1977), 56 Ill. App. 3d 184, 187, 370 N.E.2d 1225.

*People v. McGhee* is distinguishable from the instant case in that the parent in *McGhee* was denied access to defendant. In *McGhee*, the parent of a juvenile who had been taken into custody telephoned the station to speak with him but was not permitted to do so. She later went to the station, but again was not permitted to see or speak with him. Here, there is nothing in the record to suggest that the mother and uncle were denied access to defendant while he was at the police station. Further, the testimony by the police officers in this case indicated that they talked with defendant's uncle personally, while the officer in *McGhee* simply left his business card at the parent's home.

Defendant also relies on *People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654. That case is distinguishable from the instant case because there the defendant told the officers that he did not know where his parents could be reached and the officers made no further efforts to locate them. *People v. Cole* (1988), 168 Ill. App. 3d 172, 522 N.E.2d 635, can be readily distinguished from this case. In *Cole* there was no evidence that the police contacted defendant's mother, while in the instant case there was testimony that the officers talked with defendant's uncle before defendant was questioned. Here, defendant's written confession was taken by the court reporter about 1:45 a.m. on September 24, 1985. Assistant State's Attorneys Michael Kelly and Michael Gerber, as well as Officer Wieclawek and youth officer Brownley, were present when defendant gave his written statement admitting that he shot Rogelio Valdez.

For the foregoing reasons, we find that defendant's confession was voluntarily given.

Defendant next argues that the trial court erred in disallowing into evidence the third-party testimony of Ralph Tamez. We disagree.

During trial, defense counsel attempted unsuccessfully to introduce an alleged admission made by Pablo Alvarez through the direct testimony of Ralph Tamez. Defense counsel made an offer of proof that, five weeks after the shooting, Alvarez told Tamez that he was responsible for the crimes for which defendant was charged. He further explained that Alvarez remained unavailable for trial despite his attempts to locate him through subpoenas and investigators.

■ The general rule in Illinois is that extrajudicial declarations by the declarant not under oath that he, and not the defendant on

trial, committed the crime are inadmissible as hearsay even though the declarations are against penal interest. (*People v. House* (1990), 141 Ill. 2d 323, 566 N.E.2d 259; *People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 501 N.E.2d 207.) The question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide considerable assurance of its reliability by objective indicia of trustworthiness. *People v. Bowel* (1986), 111 Ill. 2d 58, 488 N.E.2d 995.

In *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the court expounded four indicia of trustworthiness: (1) the statement is made spontaneously to a close acquaintance shortly after the crime occurs; (2) the statement is corroborated by other evidence; (3) the statement is self-incriminating and against the declarant's interest; and (4) there is adequate opportunity for cross-examination of the declarant. (*Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49.) The presence of all four factors is not a condition of admissibility. They are indicia, not hard and fast requirements. (*People v. House* (1990), 141 Ill. 2d 323, 566 N.E.2d 259.) The question to be considered in deciding the admissibility of such an extrajudicial declaration is whether it was made under circumstances which provide "considerable assurance" of its reliability by objective indicia of trustworthiness. *People v. Cruz* (1994), 162 Ill. 2d 314, 343.

Illinois courts have often applied the four *Chambers* factors as a conjunctive test in affirming orders excluding from evidence third-party extrajudicial statements against penal interest. *People v. Powell* (1985), 139 Ill. App. 3d 701, 487 N.E.2d 719 (testimony that third party responsible for sexual assault of minors excluded because statement not made spontaneously); *People v. Newell* (1985), 135 Ill. App. 3d 417, 481 N.E.2d 1238 (third party's confession of murder in telephone conversation excluded because not corroborated by other evidence).

■ Applying the *Chambers* factors to the instant case, the statement that Pablo Alvarez allegedly made to Ralph Tamez, a fellow gang member, occurred five weeks after the crime against Valdez. Although the relationship between Alvarez and Tamez meets the test for acquaintanceship, we cannot say that the five-week lapse between the crime and the declarant's alleged confession was either a short time or spontaneous.

Although Alvarez's statement is certainly a declaration against interest, the fact that he remained unavailable for cross-examination distinguishes this case from *Chambers*, where the declarant was in court. The trial court's ruling excluding statements against penal

interest will not be reversed absent an abuse of discretion. (*People v. Bowel* (1986), 111 Ill. 2d 58, 68, 488 N.E.2d 995, 1000.) In the instant case, in light of the fact that Alvarez remained unavailable to testify at trial, we cannot say that the alleged statement was made under circumstances which provided considerable assurance of its reliability. For all of the foregoing reasons, we conclude that the trial court properly excluded the third-party testimony of Ralph Tamez.

Defendant also argues that the trial court erred by failing to instruct the jury that specific intent to kill was a necessary element of the crime of attempted murder. He maintains that the court's failure to properly instruct the jury resulted in his improper conviction. The State argues that defendant has waived this argument.

Generally, a defendant waives any error contained in jury instructions if he does not object or proffer alternative instructions at trial, and ordinarily, issues not properly raised in a defendant's post-trial motion will not be considered on appeal. (*People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141.) However, if the interests of justice require, substantial defects in jury instructions in criminal cases may be considered even though the defendant has failed to make timely objections. (134 Ill. 2d R. 451(c).) This exception will be invoked to correct grave errors or to correct errors in cases so closely balanced that fundamental fairness requires that the jury be properly instructed. The burden of proof and elements of the offense are essential to a fair trial, and the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the State's burden of proof. (*Reddick*, 123 Ill. 2d at 198.) Defendant here raises the issue for the first time on appeal, and under *Reddick*, we proceed to review the issue under the grave error doctrine.

The trial court here instructed the jury that it could find defendant guilty of two attempted murder charges without finding that he had the specific intent to kill Adrian Guerrero or James Lilly. The court told the jury that a lesser state of mind would suffice. Further, the court gave the jury the instructions for both murder and attempted murder. Based on these instructions, it was possible for the jury to find defendant guilty of attempted murder without finding that he had the specific intent to kill the victims.

■ In a prosecution for attempted murder, where alternative culpable mental states will satisfy the target crime of murder, but only one is compatible with the mental state imposed by the attempt statute, the incompatible elements must be omitted from the jury instructions. (*People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154.) The offense of attempted murder requires a mental state of

specific intent to kill. (*People v. Mitchell* (1991), 209 Ill. App. 3d 562, 568 N.E.2d 300.) Here, the court stated that a lesser state of mind would suffice and further gave instructions for both the murder and attempted murder offenses. These instructions read together stated an improper burden and constituted grave error. Thus, we reverse defendant's conviction on the attempted murder counts and order a new trial as to those counts. *People v. Thomas* (1989), 185 Ill. App. 3d 1050, 542 N.E.2d 100.

Defendant next contends that he was deprived of his fifth amendment right to a fair trial. Specifically, he maintains that during closing argument the prosecutor compared him to Al Capone, encouraged the jury that his conviction would ensure safety in the community and suggested that defense counsel had fabricated a defense. He asserts that the following statements were improper:

"MR. CALABRESE [Assistant State's Attorney]: You know, the other day I was watching television and I saw a review of a movie, The Untouchables, and the guy on the TV said, [']Boy you watch that movie and you remember just how bad gangland Chicago was in the twenties['] and I looked at TV and I said, [']Man, wake up. What is the difference between 1988 and 1925? The gang violence continues. It is just a little bit different. There was a Capone on the streets of the City of Chicago in the twenties and there was a Capone in this case. You heard the gangs. You heard them. His friends. The people who run the streets. Capone controlled Chicago. Hernandez controls 22nd Street.[']

\* \* \*

I can assure you that if you convict the defendant, he will get the message and I don't know how many of those people will get the message and how far in the streets this message will go. \*\*\* A verdict of guilty will [send] the message that something is going to be done and that the streets are to be taken back for the people of the State of Illinois.

\* \* \*

It is kind of a panic defense. \*\*\* He is just overwhelmed. It made me tired to sit here and listen. \*\*\* When he is done running around there accusing Miller, there is the in-court identification of Lilly.\*\*\* He has to run all the way over in court with Guerrero. \*\*\* Now \*\*\* bad guy Pullano showed a picture, that is it, it was Pullano. \*\*\* Then where do we go now? Herrera, now testifying against him, I better run over there and come up with something about Herrera \*\*\* and then what happens next? Well, then Mr. Green has to scurry over here to the confession."

Defendant did not properly object to each claim of error and it is therefore waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, we shall proceed to the merits of defendant's argument under the plain error doctrine. (137 Ill. 2d R. 615(a).) A prosecutor is permitted great latitude in his closing argument (*People v. Patterson* (1986), 140 Ill. App. 3d 421, 488 N.E.2d 1283), and improper remarks will not require reversal of a conviction unless they constitute a material factor in defendant's conviction. (*People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 452 N.E.2d 32.) It is the reviewing court's duty to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. *People v. Ammons* (1984), 120 Ill. App. 3d 855, 458 N.E.2d 1031.

■ Based on our review of the record, the most prejudicial comment made by the prosecution was:

> "[There] was a Capone on the streets of the City of Chicago in the twenties and there was a Capone in this case. You heard the gangs. You heard them. His friends. The people who ran the streets. Capone controlled Chicago; Hernandez controls 22nd Street."

The courts have held that the State may not resort to unfounded or inflammatory remarks in closing arguments (*People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 310), and clearly the prosecutor's comments were improper; however, we have examined the cumulative impact of the comments complained of and find that the remarks did not result in substantial prejudice to defendant. In view of the overwhelming evidence of defendant's guilt, it is doubtful that the cumulative effect of the remarks complained of would have materially affected the jury's verdict. Therefore, we find that the prosecutor's remarks constituted harmless error.

Defendant finally argues that the trial court abused its discretion in sentencing him to 70 years in prison. Specifically, he contends that because he was a juvenile at the time of the offense and did not have a prior criminal record, along with other mitigating factors, the court's 70-year sentence was excessive.

Defendant was convicted of murder and attempted murder. (720 ILCS 5/9—1, 5/8—4 (West 1992).) The court considered factors in mitigation and aggravation and stated that defendant acted deliberately, intentionally and maliciously. The court explained that it could not see any rehabilitative potential in defendant and that defendant was a "menace to society." Thus, the court considered defendant's potential for rehabilitation.

The trial court is normally in the better position to determine an appropriate sentence, and its decision will not be disturbed absent an

abuse of discretion. (*People v. Kidd* (1989), 180 Ill. App. 3d 1065, 536 N.E.2d 816; *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.) The sentence of imprisonment for murder shall be not less than 20 years and not more than 60 years (730 ILCS 5/5—8—1(a)(1)(a) (West 1992)), and the sentence for attempted murder shall be not less than 6 years and not more than 30 years (730 ILCS 5/5—8—1(a)(3) (West 1992)).

■ The Unified Code of Corrections states:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant ***was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." (730 ILCS 5/5—8—4 (West 1992).)

Defendant was convicted of both murder and attempted murder. He was, therefore, within the statutory requirement for imposition of consecutive sentences. However, in light of our determination that defendant should be granted a new trial on the attempted murder conviction, the sentence on that charge is likewise vacated.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded. As part of our judgment, we grant the State's request and assess defendant $50 as costs for this appeal. We also grant the State $25 as costs for the oral argument held in this cause.

Affirmed in part; reversed in part and remanded.

BUCKLEY and O'CONNOR, JJ., concur.