THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY McGHEE, Defendant-Appellant.

First District (2nd Division)   No. 85—2438

Opinion filed March 17, 1987.

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and John J. Budin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, a 16-year-old juvenile, was tried as an adult. A jury convicted him of murder. He seeks a reversal on the ground that his confession was obtained and admitted in evidence in violation of the fourth amendment (U.S. Const., amend. IV). Kenneth Fisher, a codefendant, was tried separately and is not involved in this appeal.

On May 27, 1984, at about 8:30 a.m., some boys discovered the body of the victim, Thelma Fisher. During that day, the police spoke with Troy Fisher, the victim's father, Kenneth Fisher, the victim's cousin, and Mrs. Forrester, who was Kenneth Fisher's mother. Kenneth Fisher was in police custody on an unrelated charge. From these interviews, the police were able to establish that on the evening before her death, the victim was in the company of her cousin, Kenneth Fisher, Kathy Slover, and defendant.

At about 5 p.m. on May 27, 1984, the police went to the home of Thomas Camper, defendant's uncle, with whom the defendant had been residing. Thomas Camper's son, Sammy, told the police that he saw Kenneth Fisher drop off defendant at home in the early morning hours. After being told by the uncle that defendant was in the back yard, the police went there, told defendant of their investigation of the death of Thelma Fisher, and asked him to go to the police station with them. They did not tell defendant that he did not have to go with them. One of the detectives said that he left his business card with the defendant's uncle.

On the way to the Area 4 station in an unmarked police car, defendant was driven past the area where the victim's body was found. At 5:30 p.m., defendant was placed in an interrogation room and left there while the police spoke to a Ms. Green, who told them that she was with the group earlier the night before.

Kenneth Fisher, who was in police custody at the 13th District Station on an unrelated charge, was taken to Area 4 Violent Crimes Station and placed in an interrogation room about 5 or 6 feet from the room defendant was in.

At about 6 p.m., the detectives gave defendant his *Miranda* rights and interviewed him. They told him that they knew he was with Thelma the night before and that he might have some information about her death. Defendant told them he was with the group, including Thelma, the evening before and was dropped off at home at about 1 or 2 a.m. He saw Fisher drive off with Thelma. He denied any knowledge of the murder.

The detectives left defendant in the interrogation room and spoke with Fisher. Fisher told the detectives that he, Thelma and defendant had driven to an area known as Hobo Hills on the south side of Chicago. Thelma and Fisher had an argument over Fisher's marijuana and during the argument, Fisher picked up a piece of rock and struck Thelma in the forehead causing her to fall. He told the detectives that the defendant got out of the car, pulled out some speaker wire with which he bound Thelma, then struck her four or five times with a chunk of concrete.

At about 8 p.m., the detectives returned to speak to defendant and again advised him of his *Miranda* rights. At this second interview, the detectives informed the defendant of Fisher's statement. Defendant admitted that he was at Hobo Hills when Fisher beat the victim with a rock but denied any participation in the murder.

At about 11 p.m., Mrs. Nolan, defendant's mother, phoned Area 4 and was permitted to speak with her son. After their phone conversation, Mrs. Nolan went to the station. She arrived at 11:30 p.m., but was not permitted to see or speak with her son.

Later that evening, the detectives phoned the State's Attorney's office and Assistant State's Attorney John Hynes arrived at Area 4 around midnight. After speaking with the detectives, Hynes spoke with Fisher and Ms. Green. At about 2 a.m., after identifying himself and his position to defendant, giving him *Miranda* warnings, and explaining that defendant would be tried as an adult, Hynes interviewed the defendant. Defendant told Hynes that he was present when the murder took place but persisted in his denial of any participation. Hynes left and spoke to Fisher, then returned to defendant and told him that he did not believe him. Defendant indicated that he would take a lie detector test, but, instead, Hynes arranged for Fisher to be brought into defendant's interrogation room, where the codefendants were permitted to confront each other.

This resulted in an argument which required a physical separation of the defendant and Fisher. Hynes returned to speak to defendant and again advised him of his *Miranda* rights. Hynes requested that a court reporter be sent to Area 4. The court reporter arrived at about 4

a.m., and at this time, a youth officer was called by telephone.

The court reporter transcribed defendant's statement. At about 5:15 a.m., defendant was shown his statement and asked to sign it. Hynes testified that he reviewed the statement with defendant and had him initial each page before signing it. Although the record is not clear as to when the youth officer arrived, it is clear that the youth officer was present when the defendant signed the confession.

Defendant testified at the suppression hearing that he got up at 7 a.m. on May 26 and worked all day. He went out that evening with Kenneth Fisher, Kathy Slover and the victim. He returned to his home at about 1 a.m. on May 27 and did not sleep that night. He was arrested at 5 p.m. on May 27. Therefore, according to defendant's testimony, he had no sleep from 7 a.m. on May 26, until after 5:15 a.m. on May 28. He testified that he was beaten, but the police denied any brutality. He also testified that he was never told that he was free to leave. The trial court denied the motion to suppress.

At trial, the witnesses' testimony was virtually the same as their testimony at the suppression hearing. The jury found defendant guilty of murder and not guilty of attempted rape. Defendant's post-trial motions were denied, and he was sentenced to 55 years' incarceration. This appeal followed.

■■■ The Juvenile Court Act provides that a law-enforcement officer who takes a minor into custody shall immediately make a reasonable attempt to notify the parent or a legally responsible person "that the minor has been taken into custody and where the minor is being held; and the law enforcement officer shall without unnecessary delay take the minor to the nearest juvenile police officer designated for such purposes." (Ill. Rev. Stat. 1985, ch. 37, par. 703—2(2).) Defendant contends that the police violated this statute by denying his mother the opportunity to see him when she came to the station at about 11:30 p.m., before he made any inculpatory statement. He further asserts that the statute was violated by not having a juvenile officer present until about 11 hours after he was brought into the Area 4 station. The State, however, claims that it complied with the statute when one of the officers left his business card with Thomas Camper, defendant's uncle, and had a juvenile officer present when defendant signed his confession at about 5 a.m. We disagree. However, violation of the statute by law-enforcement officers does not *per se* constitute a denial of the defendant's rights under the fourth amendment. (*People v. Clements* 1985), 135 Ill. App. 3d 1001, 482 N.E.2d 675, *cert. denied* (1986), ____ U.S. ____, 90 L. Ed. 2d 361, 106 S. Ct. 1952.) Nevertheless, the statutory violation can be considered as a part of the "totality of cir-

cumstances" to determine whether there was a denial of the fourth amendment protection to which a defendant is entitled. 135 Ill. App. 3d 1001, 1007.

■ The State contends that defendant was not under arrest because he voluntarily accompanied the officers from his uncle's residence to the police station and, therefore, there was no seizure in violation of the fourth amendment. The test of whether there was an arrest is what a reasonable man, innocent of any crime, would have believed given the circumstances. (*People v. Clay* (1984), 124 Ill. App. 3d 140, 148, 463 N.E.2d 929, *appeal denied* (1984), 101 Ill. 2d 569.) Applying this test to the facts of this case, we find that defendant was indeed seized within the meaning of the fourth amendment.

The fourth amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing *** the person or things to be seized." (U.S. Const., amend. IV.) The requirement applies to both arrest and search warrants. In this case, the police did not make any effort to obtain a warrant for the arrest of the defendant.

> "The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause. [Citation.] To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant, would subvert this fundamental policy." *Wong Sun v. United States* (1963), 371 U.S. 471, 481-82, 9 L. Ed. 2d 441, 451-52, 83 S. Ct. 407, 414.

■ When the defendant was taken from his uncle's home to Area 4 at about 5 p.m. on May 27, 1984, the only information that the officers had regarding the defendant was that he and others were in the company of the victim the night before. "It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion [citation], though the arresting officer need not have in hand evidence which would suffice to convict." (*Wong Sun v. United States* (1963), 371 U.S. 471, 479, 9 L. Ed. 2d 441, 450, 83 S. Ct. 407, 413.) We conclude that the information which the officers had was not sufficient to obtain a warrant for the arrest of defendant and, therefore, was not sufficient to justify their unilateral conduct. "The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.' "

*Wong Sun v. United States* (1963), 371 U.S. 471, 479, 9 L. Ed. 2d 441, 450, 83 S. Ct. 407, 413.

■■ We now consider whether the series of *Miranda* warnings given from about 5 p.m. to 4 a.m. the following day were sufficient to purge the primary taint of the unlawful arrest. This issue was decided in favor of the defendant in *Brown v. Illinois* (1975), 422 U.S. 590, 602-03, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261, where the court held:

> "If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. [Citation.] Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom would well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.' [Citation.]"

■ Next, citing *People v. Thomas* (1981), 94 Ill. App. 3d 895, 419 N.E.2d 480, *appeal denied* (1981), 85 Ill. 2d 573, the State argues that even if the police lacked probable cause to arrest defendant, the confession is admissible if statements given by witnesses between the time of the arrest and the confession provide probable cause for the defendant's arrest. *Thomas* does not support this proposition. The *Thomas* court said that "the facts in possession of the police at the time of the arrest were sufficient to establish probable cause for the arrest." (94 Ill. App. 3d 895, 899, 419 N.E.2d 480.) In *Thomas*, defendant was arrested at about 3 a.m. at his home, where he lived with his father. He did not know where his father was or when he would return. Defendant was given his *Miranda* warnings and taken to the police station, where he informed the officers that he was 13 years old. A police officer made attempts to locate his parents and notified the youth officer. The youth officer and defendant's father arrived shortly after the arrest. At about 5:30 a.m., a conversation took place in the presence of defendant's father in which defendant made further admissions. At the conclusion of that conversation, defendant's father signed a form agreeing to the search of his house. (94 Ill. App. 3d 895, 898-99, 419 N.E.2d 480.) "The totality of these relevant circumstances indicates the voluntariness of defendant's statements." (94 Ill. App. 3d 895, 901,

419 N.E.2d 480.) In *Thomas*, there was no intervening probable cause because the police had probable cause to make the arrest. *Thomas*, therefore, cannot support the State's theory.

In addition, intervening probable cause does not attenuate the taint of an illegal arrest. (*United States v. Cherry* (5th Cir. 1985), 759 F.2d 1196, *cert. denied* (1987), 479 U.S. ____, 93 L. Ed. 2d 983, 107 S. Ct. 932.) The State has cited no case to support its theory.

In *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731, our supreme court said: "Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed." An incriminating statement by a juvenile is a sensitive concern and the greatest care must be taken to assure that the admission was voluntary. *People v. Prude* (1977), 66 Ill. 2d 470, 476, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418.

A 15-year-old boy was arrested without a warrant at midnight and questioned by the police until 5 a.m., when he confessed to a murder. The conviction was reversed in *Haley v. Ohio* (1948), 332 U.S. 596, 92 L. Ed. 224, 68 S. Ct. 302. Justice Douglas, noting that special care in scrutinizing the record must be used where a juvenile is involved, wrote: "No friend stood at the side of this 15-year-old boy as the police, working in relays, questioned him hour after hour, from midnight until dawn. *** The age of petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police toward his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction." 332 U.S. 596, 600-01, 92 L. Ed. 224, 229, 68 S. Ct. 302, 307.

In reliance on a vague physical description, the police in *People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103, *cert. denied* (1982), 459 U.S. 878, 74 L. Ed. 2d 143, 103 S. Ct. 174, asked the adult defendant to accompany them to the station instead of questioning him at his home. Defendant was given repeated *Miranda* warnings and questioned five times in an interrogation room over a 12-hour period. He was never told he was free to leave. His confession was suppressed under the fourth amendment because the detention resembled a traditional arrest which was based on less than probable cause. The police were conducting an expedition for evidence which caused the arrest to have an improper quality of purposefulness. See *Dunaway v. New York*

(1979), 442 U.S. 200, 218, 60 L. Ed. 2d 824, 834-35, 99 S. Ct. 2248, 2259.

In *People v. Ealy* (1986), 146 Ill. App. 3d 557, 497 N.E.2d 101, *cert. denied* (1987), 479 U.S. ___, 93 L. Ed. 2d 1002, 107 S. Ct. 954, the court suppressed a confession obtained from an adult after an 18-hour detention and interrogation. The defendant was taken from his residence without probable cause in violation of the fourth amendment. In *People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654, *appeal denied* (1984), 101 Ill. 2d 576, a 15-year-old juvenile was detained for about 3 hours one day and 10 hours two days later without probable cause. He was given *Miranda* warnings, but his parents were not notified and he was never told he was free to leave. His murder confession was suppressed because he was not lawfully in custody and, under the totality of the surrounding circumstances, he was illegally detained under the fourth amendment.

Based upon the foregoing authorities and considering the defendant's age, length of interrogation, lack of sleep, failure by the authorities to properly notify defendant's parents or a youth officer, refusal to permit his mother to see him at the police station prior to the time that he made any inculpatory statements, and lack of probable cause, we conclude that under the totality of circumstances, the defendant's confession was not voluntary.

We conclude that the taking of the defendant from his home was an arrest or seizure, and that it was made without probable cause. No act occurred between the original arrest and the defendant's confession which purged the taint of the illegal arrest. Therefore, the confession was obtained in violation of the defendant's rights guaranteed by the fourth amendment.

We believe that the evidence at trial was sufficient for the trial court to conclude that defendant was guilty beyond a reasonable doubt. We are not making a finding as to defendant's guilt or innocence which would be binding on retrial, but our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCARIANO, P.J., and STAMOS, J., concur.