SCHWARTZ, Chief Judge.
B.S., a seventeen-year-old girl, appeals from a delinquency adjudication based upon two thefts from her employer. We reverse upon the conclusion that her police station confession was improperly admitted as the product of a non-consensual confinement rather than, as the lower court held, a voluntary agreement to accompany the officers to the station.
Since the trial judge agreed with the state in denying B.S.’s motion to suppress the confession, we view the record in the light most favorable to its position. See McNamara v. State, 357 So.2d 410 (Fla.1978).[1] So considered, it shows that on December 7, 1987, two plain clothes Miami Springs officers, who had suspicious information about B.S. but no warrant, went to her home in that city. B.S.’s mother, with whom she lived, was not present and the girl was baby-sitting her younger brother. Detective Cole testified that he and his partner informed her that they “wanted” her to come with them to the station for questioning. While he indicated that, since *839 they had no warrant, her doing so was voluntary,[2] he did not tell B.S. that she was not under arrest and was free to refuse to go with them. When she informed the policemen that she was in charge of her brother, and that he would be alone if they did not wait for her mother to return home from work, they told her that they would take him to the station with her. In fact, that is what occurred. The officers waited for her to change clothes from the pajamas she was wearing and took B.S. and her brother in a police car to the Miami Springs station house. There, after duly administering Miranda warnings of which there is no complaint, B.S. confessed to the crimes with which she was charged. On this showing, the trial judge denied a motion to suppress the confession made on the basis that it was the product of an illegal arrest, apparently on the contrary ground that B.S. had validly consented to her presence at the station. We cannot agree.
The legal parameters of the decision making process in this case are not controverted. If B.S. went to the station because she had been the subject of the functional equivalent of an arrest — which was admittedly unjustified — the confession must be suppressed as the tainted product of that improper incarceration. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Caso v. State, 524 So.2d 422 (Fla.1988), cert. denied, — U.S. —, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). On the other hand, if she went there on her own accord and without coercion, there was no illegality which would preclude the validity of the confession. Roman v. State, 475 So.2d 1228 (Fla.1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986); Dodd, 396 So.2d at 1205. In determining into which category a particular set of facts falls, a process which must be based upon a consideration of the "totality of all the surrounding circumstances,” Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); Drake v. State, 441 So.2d 1079 (Fla.1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832; 2 W. LaFave, Search & Seizure § 5.1(a), at 390 nn. 20-21 (2d ed. 1987), and cases cited, our supreme court has stated that the ultimate and
‘only relevant inquiry is how a reasonable man in the suspect’s position would have understood his situation.’ Roman v. State, 475 So.2d 1228, 1231 (Fla.1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986) (quoting Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)).
Caso v. State, 524 So.2d at 423-24; see also Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989).
Applying those rules, we think it obvious that, in her situation, B.S. could not have felt free to disobey the officers and must therefore be deemed to have been involuntarily detained. In reaching this conclusion, we rely on several aspects of the situation in which the juvenile found herself in her confrontation with the policemen:
1. Of foremost importance is the simple fact that B.S. was a seventeen-year-old juvenile. Youth has often been held almost necessarily to involve a vulnerability to the wishes of adult authority figures like policemen which is the antithesis of an exercise of the child’s free will. Seals v. United States, 325 F.2d 1006 (D.C.Cir.1963) (nineteen-year-old), cert. denied, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982; People v. McGhee, 154 Ill.App.3d 232, 107 Ill.Dec. 369, 507 N.E.2d 33 (1987) (sixteen-year-old), appeal denied, 116 Ill.2d 570, 113 Ill.Dec. *840 311, 515 N.E.2d 120 (1987); 2 W. LaFave, Search & Seizure § 5.1(a), at 392 (“Obviously, the youth or inexperience of the suspect must also be taken into account.”) The rule is the same as to the indistinguishable issue of the validity of a minor’s consent to search. See Schneckloth v. Bustamonte, 412 U.S. at 248, 93 S.Ct. at 2058, 36 L.Ed.2d at 875 (“The traditional definition of voluntariness we accept today has always taken into account evidence of minimal schooling [and] low intelligence....”); State v. Badger, 141 Vt. 430, 450 A.2d 336 (1982) (sixteen-year-old); 2 W. LaFave, Search & Seizure § 8.2(e). See generally Note, Preadjudicatory Confessions and Consent Searches: Placing the Juvenile on the Same Constitutional Footing as an Adult, 57 B.U.L.Rev. 778 (1977).
2.It is admitted that, despite the virtually inherently coercive situation in which B.S. found herself — one in which even an enunciation of the policeman’s wishes might naturally have led her to think they must be obliged — the officers did not disabuse her of this belief by specifically telling the girl that, as was indeed the case, she was not required to accompany them and had every right to refuse. Such a failure is decisive on the side of the conclusion that compliance with police authority — made without specific knowledge of the right to refuse — is not voluntary. As LaFave says:
The consideration most frequently cited in the cases finding consent is that the police specifically advised the suspect that he was not under arrest or that he was free to leave if he wished. Likewise, the cases coming down on the arrest side of the issue often note that such explanation was lacking....
2 W. LaFave, Search & Seizure § 5.1(a), at 390-91, and cases cited at nn. 23-24 (footnotes omitted). Moreover, the coercive effect of a lack of contrary explanation is emphasized when a child, who might be even less expected to know or act upon his rights, is involved. See Note, Preadjudica-tory Confessions and Consent Searches: Placing the Juvenile on the Same Constitutional Footing as an Adult, supra, at 778 (discussing provision of the Judicial Administration and American Bar Association Joint Commission on Juvenile Justice Standards Project that warnings concerning the right to refuse are required to validate a juvenile’s consent; “[w]hen juveniles are informed of the right to refuse consent, they become aware that no compulsion to cooperate exists”).
3. The officers phrased their wish for the appellant to come with them in terms of what they “wanted” her to do. In our judgment, this term, while perhaps not so coercive as an order or demand, is much closer to that end of the continuum than a clearly non-mandatory “request” or invitation. See 2 W. LaFave, Search & Seizure § 5.1(a), at 391, and cases collected at nn. 26-28; State v. Ostroski, 186 Conn. 287, 291, 440 A.2d 984, 986 (1982) (defendant told he “should come in tonight”; deemed coercive), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142; United States v. Allen, 436 A.2d 1303, 1309 (D.C.App.1981) (defendant told “you have to come to homicide with us”; deemed coercive). Again, the fact that it is a juvenile who is told that adult officers “want” her to come in surely bears negatively on her ability to resist. See Note, Preadjudicatory Confessions and Consent Searches: Placing the Juvenile on the Same Constitutional Footing as an Adult, supra.
4. Just as significant are the other, perhaps unique, circumstances involved in this case. Faced with the information that the child was home alone with her younger brother, the officers neither waited for her mother to return, nor decided to leave and come back later themselves. Compare People v. Wipfler, 68 Ill.2d 158, 11 Ill.Dec. 262, 368 N.E.2d 870 (1977) (request to come to police station passed on to defendant by his mother). Instead, they waited while the appellant changed from her pajamas and drove her to the police station with, her brother in tow. The only impression this series of events could reasonably evoke is that the officers were not going to take no, or even a delayed yes, for an answer and that no opposition to their desires would do any good. Moreover, since it is now a familiar rule that possession of one’s ticket or baggage stub involves a constraint upon *841 his liberty, see Florida v. Royer, 460 U.S. at 491, 103 S.Ct. at 1319, 76 L.Ed.2d at 229; 2 W. LaFave, Search & Seizure § 6.1(a), at 392 n. 38, the same must be true of the officers’ possession of B.S.’s brother. The whole picture smacks too much of police hostage-taking to permit the finding of vol-untariness to stand.
In sum, we find that, as a matter of law B.S.’s presence in the police station was not procured through her voluntary consent and the confession which resulted should have been suppressed. The judgment below is therefore reversed for a new trial.
Reversed.
COPE, J., concurs.

. We therefore discard the appellant’s testimony on the critical voluntary-involuntary point that the officers told her "that [she] had to go with them to the police station.” Compare State v. Dodd, 396 So.2d 1205, 1206 (Fla. 3d DCA 1981), approved, 419 So.2d 333 (Fla.1982), relied upon by the state, in which the defendant himself testified that he "volunteered" and had “agreed” to go with [the police].”

. The record is highly ambiguous as to whether the officers actually stated to B.S. that her accompanying them was "voluntary" or that they simply understood that fact but did not convey it to her. Because of our obligation with respect to the manner in which the record must he read, as well as because our interpretation of the other decisive factors results so clearly in a determination that the trip to the station was involuntary as a matter of law anyway, see 2 W. LaFave, Search & Seizure § 5.1(a), at 390-91 (2d ed. 1987), we may assume that the word "voluntary” was in fact uttered in B.S.’s presence.