# STATE OF FLORIDA v WORD, et al.

## Case No. 90-354-D

Eleventh Judicial Circuit, Dade County

May 3, 1991

### APPEARANCES OF COUNSEL

**Janet Reno,** State Attorney, and **Flora Seff** and **Michael Spivak,** Assistant State Attorneys, for plaintiff.

**Rick Freedman, Esquire,** Rick Freedman & Associates, P.A., for defendant.

### OPINION OF THE COURT

ALFONSO C. SEPE, Circuit Judge.

## ORDER GRANTING MOTION TO SUPPRESS CONFESSION

THIS CAUSE having come before the Court on the Defendant AFTON HOWARD's Motion to Suppress his confession to police, and the Court having heard extensive testimony, having considered argument of counsel, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law.

The Defendant is a fifteen year old black male juvenile who had completed the seventh grade and had begun the eighth grade at J.R.E. Lee Opportunity School at the time of his arrest for the capital offense of first degree murder. The Defendant had previously been enrolled at R.R. Moton Elementary School, a school offering classes for slow learners and readers, in the sixth grade, and attended Southwood Junior High School in the seventh grade where he was receiving poor to failing grades.

On the night of December 30, 1989, a shooting occurred in Perrine, which resulted in the death of one individual and the wounding of a second individual. Homicide detectives were assigned to the investigation and the team was made up of five detectives including the lead detective Garafalo, and detectives Santos, Crawford, Remley and Borrego.

Between December 30, 1989 and January 2, 1990, several leads were developed which resulted in the eventual questioning of three subjects on the night of January 2nd, continuing into the early morning hours of January 3rd. During that time, the homicide detectives obtained confessions from the three subjects, each of which implicated the three subjects, and two other individuals, one of whom was the Defendant now before this Court.

As a result of the confessions, Detective Santos was instructed to pick up the defendant for questioning in reference to his involvement in the homicide of December 30, 1989. At approximately 2:00 p.m. on January 3rd, some twelve hours after the confessions and arrests of the three co-defendants, Detectives Santos and Crawford proceeded to an address that the defendant was supposed to be living. They came upon an abandoned house and proceeded to question residents in the area as to the whereabouts of the defendant, (referring to him by his given name and the nickname of "Nut"), enabling them to get a better address.

Upon arrival at the defendant's home they initiated contact with the defendant's mother, Pauline Baker. The two detectives identified themselves as detectives with the Metro-Dade Police Department and stated that they were there on an ongoing police investigation. They asked

**183**

where the defendant was and were told by the mother that he was at school. The detectives stated that they were going to go to the school to question the defendant and proceeded on their way. It is disputed as to whether or not the mother asked if she could come along, but it is undisputed that the detectives did not offer her this opportunity, and further that Detective Santos prefers not having the parent present during questioning. In addition, the detectives made a conscious decision not to inform the defendant's mother that they were with the homicide unit, or that they were investigating a homicide, or that the defendant was being investigated regarding his involvement in that homicide.

The detectives proceeded to J.R.E. Lee, met with the principal and directed that the defendant be brought out of class. Once in the principal's office, the detectives repeated their routine by informing the defendant that they were there regarding an ongoing police investigation, and explained to the defendant that he was going to be questioned, and that they wanted him to come down to the station for questioning. At no time did the detectives inform the principal or the defendant that they were investigating a homicide, or that they were investigating the defendant's involvement in that homicide. In addition, at no time did the detectives inform the defendant that he had the right to refuse to go with them, nor did they even suggest to the defendant that he call home and speak with his mother before going with them to the station.

The defendant had never been interrogated before, never been arrested before, never been Mirandized before, and never even been to a court of law before this incident.

At the station, Detective Santos commenced a "pre-interview" which was an unrecorded period of questioning of close to two hours duration, at which only the defendant and Santos were present. While recording equipment was available, it was not used, and the court finds it interesting to note that in many jurisdictions, including this one, in misdemeanor D.U.I. cases, a subject is videotaped during questioning, but that it is not the policy to audiotape or videotape pre-interviews when it comes to the charge of first degree murder.

Santos presented the defendant with a Miranda rights form and a Consent To Search form. Santos read each right to the defendant and asked him if he understood that right; the defendant replied that he did and Santos instructed him to initial the appropriate answer on the form. At no time did Santos ask the defendant what each right in the rights form meant to the defendant. After the pre-interview, a stenogra-

184

pher arrived and a formal, sworn statement was taken. The sworn statement was transcribed, typed, and the defendant was instructed to initial each page and make corrections and sign the form; the defendant also signed the affidavit portion of the sworn statement swearing to its truth. The defendant testified that he did not understand the meaning of such words in the affidavit as "affidavit", "deposes" and "administers oath", as well as such a fundamental term as "introduced into evidence". This testimony went completely unrebutted by the State whose main witness candidly admitted that he had no idea if the defendant understood the meaning of those terms. The Court is convinced from the totality of the evidence that the defendant did not understand the significance of the words and terms.

During the pre-interview and the subsequent formal statement, the police made no attempt to contact the mother of the defendant nor offer the defendant the opportunity to call his mother. Santos stated that at no time did the defendant request the opportunity to call his family, but admitted that he did not offer the opportunity either. The defendant's mother testified that she was told by the detectives that they would bring her son home after they questioned him, and it was not until after she received a call telling her that her son was at Youth Hall that she knew that he was not coming home. She additionally testified that she had no idea where the detectives were taking her son, and Detective Crawford admitted that the detectives carry business cards but that they did not give one to the defendant's mother in this case.

After considering the totality of the circumstances, the Court finds that the defendant's confession was improperly obtained as the product of a non-consensual confinement, and that the detectives, through their words and actions, intentionally misled the defendant and his mother as to the defendant's true position with regard to the investigation, the result of which, this Court holds, is that the defendant did not make a knowing and intelligent waiver of his constitutional rights, and the defendant's statements made in both the pre-interview and during the formal statement must be suppressed. Included in the totality of the circumstances are the following: (1) the defendant is fifteen years of age and two years behind in school; (2) that his comprehension of both the words and the meaning of the words included in the Miranda rights form and the affidavit page is limited; (3) the crime charged is a capital crime which subjects the defendant to the death penalty; (4) the circumstances surrounding the contact with the defendant's mother, including, but not limited to, not informing her of the fact that they were investigating a homicide in which her son was a suspect; (5) the

**185**

circumstances surrounding the initial contact with the defendant at the school, including, but not limited to, the fact that the detectives again did not inform the defendant of the fact that they were investigating a homicide in which he was a suspect; (6) the fact that they told the defendant he would be taken down for questioning, and was not advised of his right to refuse to go with them; (7) the length of the interrogation process; and, (8) the fact that no recording was made of the pre-interview notwithstanding the availability of recording devices. While perhaps no single circumstance considered herein is sufficient in and of itself to justify suppression of the confession, the Court finds that the totality of these circumstances requires suppression.

Crucial to the Court's determination is the defendant's young age of fifteen. The Third District recently addressed the issue of a non-consensual confinement of a juvenile in the case of *B.S. v State,* 548 So.2d 838 (Fla. 3d DCA, 1989):

> "Of foremost importance is the simple fact that B.S. was a seventeen-year-old juvenile. Youth has often been held almost necessarily to involve a vulnerability to the wishes of the adult authority figures like policemen, which is the antithesis of an exercise of the child's free will."

In *B.S.,* as in the case at bar, the subject was not informed that she was not required to accompany the detectives and had every right to refuse: "Such a failure is decisive on the side of the conclusion that compliance with police authority—made *without* specific knowledge of the right to refuse—is not voluntary." *Id.* at 840. Also significant to the Court's ruling is the fact that Detective Santos testified that he would prefer not having the parents coming along and being present during the questioning of a juvenile. Although not constitutionally required, it is in fact a known police practice to attempt to have the parents present during interrogation, and Detective Santos admitted same during cross-examination.

Turning to the issue of deception, the Third District addressed this issue in the case of *State v Charon,* 482 So.2d 392 (Fla. 3d DCA, 1985). In that case, the Court found that several of the detective's actions and comments undermined the voluntariness of the subject's statements. The detectives spoke to the defendant's father but, as in the case at bar, did not say that the son was identified as the perpetrator, they did not state the nature of the anticipated charges, and they did not have the father accompany the detective to the station to be present for his son's interrogation; again this was similar to the detectives' failure in the case at bar to invite the defendant's mother to

186

accompany them to the station, the detectives knowing full well that they were on their way to pick up the son for questioning in regards to a first degree murder. The *Charon* court based its decision upon a number of factors in suppressing the statements: "Charon's youth, his inexperience with the law, his lack of counsel, and the 'deception or quasi-deception' practiced by the detective." *Id.* at 393.

In *Gallegos v Colorado,* 370 U.S. 49, 82 S.Ct. 1209 (1962), the Supreme Court set forth factors to consider in determining the admissibility of a fourteen year old boy's custodial confession to police, including his youth, the length of questioning, denial of his mother's request for permission to see him, and other factors not present in the case at bar. With significance to the present case, the *Gallegos* Court held:

> "The prosecution says that the boy was advised of his right to counsel, but that he did not ask for a lawyer or for his parents. *But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police.* That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.". . .

> "He cannot be compared to an adult in full possession of his senses and knowledgeable of the consequences of his admissions. . .A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. *Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had."* 82 S.Ct. at 1212-1213 [emphasis added].

It has been said that "juveniles lack the emotional maturity of adults and thus are more susceptible to police pressures and less likely to believe in their right to silence." Note, Preadjudicatory Confessions and Consent Searches: Placing the Juveniles on the Same Constitutional Footing as an Adult, 57 B.U.L. Rev. 778, 785 (1977). In *Hall v State,* 421 So.2d 571 (Fla. 3d DCA, 1982), the police had taken the 16-year-old juvenile from the home, the mother was present, and she was told that her son was not being accused of anything. No parent was present when Hall was interrogated in a first degree murder investigation and waived his *Miranda* rights. The Court, citing the defendant's age, intelligence, education, experience and ability to comprehend the mean-

ing and effect of his statement, suppressed the confession as not having been intelligently and voluntarily made.

Numerous decisions support this Court's conclusion that the defendant's waiver was not knowingly and intelligently made. *See, e.g. Doerr v State,* 348 So.2d 938 (Fla. 2d DCA, 1977) ("the fact that a juvenile's confession was given before he had the opportunity to talk to his parents or an attorney is certainly a factor mitigating against its admissibility."), *approved,* 383 So.2d 905, 907 (Fla. 1980); *Tennell v State,* 348 So.2d 937 (Fla. 2d DCA 1977) (only interrogating police officer and fourteen year old boy present when *Miranda* rights given and defendant signed written waiver, and officer "satisf[ied] himself that the appellant understood [his rights].").

Based upon the above, it is accordingly

ORDERED AND ADJUDGED that defendant's Motion to Suppress Confession be and the same is hereby GRANTED.

DONE and ORDERED this 3rd day of May, 1991.