THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID EARNEST, Defendant-Appellant.

First District (1st Division) No. 1—88—2332

Opinion filed December 23, 1991.

Randolph N. Stone, Public Defender, of Chicago (Elizabeth Burke, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael M. O'Brien, and Susan S. Wigoda, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant David Earnest appeals from his conviction for the murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) of Herman Walker for which he was sentenced to a prison term of 20 years.

We affirm.

The incidents giving rise to defendant's conviction occurred on November 21, 1986, following a dance at a fieldhouse in Ogden Park in Chicago. While a group of people were walking away from the park, a fight erupted, and, at some point, Herman Walker was fatally shot in the chest.

Defendant, then 16 years old, was arrested early the following morning at his parents' home. He was taken to a police station where he subsequently admitted shooting Walker. His written statement to that effect was admitted into evidence at trial.

On appeal, defendant first contends the trial judge improperly denied his pretrial motion to suppress the confession on grounds that

the statement was not voluntarily given. The following facts were established during a hearing on defendant's motion.

At approximately 6:20 a.m. on the morning following the shooting, Chicago police detective Thomas Brankin, accompanied by Detectives John Smith, Robert Lane, and Roy Crillos, went to defendant's parents' home for the purpose of locating defendant. The detectives were aware at that time that defendant was a juvenile. The detectives were admitted into the home by defendant's father and arrested defendant in an upstairs bedroom.

Before the detectives left, Brankin testified, he advised defendant's parents that defendant was being taken to Chicago police headquarters at 3900 California Avenue (Area 3). Smith added that he gave defendant's parents a business card on which was written the detectives' names and the address and phone number of Area 3.

At Area 3, Lane and Crillos placed defendant in an interview room. It was approximately 8 a.m.

Detective Smith testified that shortly thereafter, he spoke with defendant for approximately 10 minutes. Smith stated that Marie Woods, a Chicago police youth officer, was present at that time. Defendant was advised of, and indicated he understood, his constitutional rights. Both Smith and Woods also advised defendant that he could be charged as an adult.

Barry Gross, an assistant State's Attorney, arrived at Area 3 and spoke to defendant at approximately 9 a.m. Smith and Woods were present during that conversation.

According to Smith, defendant's parents arrived at Area 3 at 9:30 or 10 a.m. Smith informed them that defendant admitted involvement in the crime. Defendant's parents spoke alone with defendant for over an hour. Then, with his parents present, a court reporter reduced defendant's statement to a writing, the pages of which were initialed by defendant's parents.

Defendant testified that, at the time of his arrest, the police did not tell either him or his parents why the police wanted to see him nor did they tell him he was under arrest. He stated the detectives told his mother that he was being taken to Area 3 and directed "her to come 2 hours later." At Area 3, defendant was taken to an interview room where he was interrogated in three sessions. He was not advised of his constitutional rights or advised that he could be charged as an adult. No youth officer was present during his interrogations. He first met youth officer Woods when Assistant State's Attorney Gross arrived at Area 3 a few hours after he had been questioned by detectives. It was only then, defendant stated, that he was

advised of his rights. According to defendant, he was first permitted to see his parents at 11:45 a.m. although he had earlier asked to see them. Defendant stated he was only allowed to speak with them for five minutes.

John D. Earnest, defendant's father, confirmed that, following defendant's arrest, the detectives had told him where defendant was being taken. However, neither he nor his wife was permitted to accompany defendant although they "begged" the detectives to do so. Without offering an explanation, the detectives told them to wait "a couple of hours" and then to go to Area 3. Following those directions, he and his wife waited until 9:30 a.m. to go to Area 3.

Upon arrival at Area 3, Earnest was informed by detectives that defendant had already admitted responsibility. Earnest confirmed that both he and his wife were present when defendant's written statement was prepared and that they initialled the statement's pages.

Leslie Johnson, defendant's mother, corroborated the material aspects of Earnest's testimony.

Detectives Lane and Smith both denied telling defendant's parents not to go to Area 3 until two hours after defendant was arrested.

Marie Woods testified that shortly after reporting for work at Area 3 at 8 a.m. on November 22, 1986, she and a detective met with defendant. Approximately 15 minutes later, Assistant State's Attorney Gross arrived, and defendant's interview continued with Gross present. Defendant had been informed of his rights. Woods stated defendant's parents arrived at approximately 9 a.m. After defendant gave his oral statement to Gross, he met with his parents.

■ Although Illinois courts recognize that determining the voluntariness of a juvenile's confession requires great care (*People v. Knox* (1989), 186 Ill. App. 3d 808, 542 N.E.2d 910, *appeal denied* (1989), 127 Ill. 2d 630, 545 N.E.2d 122), the issue is governed by the same totality of the circumstances test used to evaluate the voluntariness of confessions of adult defendants (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731). In evaluating the voluntariness of a juvenile's confession, however, one of the circumstances to be considered is the involvement of an adult interested in the juvenile's welfare. *Knox*, 186 Ill. App. 3d 808, 542 N.E.2d 910, *appeal denied* (1989), 127 Ill. 2d 630, 545 N.E.2d 122.

Here, an individual concerned with defendant's welfare, youth officer Woods, did confer with defendant although defendant testified to meeting Woods some time after his initial questioning. However,

defendant contends that, even assuming Woods was present during defendant's initial interview, he was deprived of an opportunity to confer with her privately. Defendant relies principally on *People v. McGhee* (1987), 154 Ill. App. 3d 232, 507 N.E.2d 33, *appeal denied* (1987), 116 Ill. 2d 570, 515 N.E.2d 120, and *People v. Knox* (1989), 186 Ill. App. 3d 808, 542 N.E.2d 910, *appeal denied* (1989), 127 Ill. 2d 630, 545 N.E.2d 122.

Although the juvenile defendants' confessions in those cases were determined to be involuntary based, in part, on the absence of an interested adult, neither can be read to require a private conference with such an individual prior to police questioning. In *People v. McGhee*, no youth officer was notified for the first 11 hours of defendant's detention by police, during which time detectives had twice interrogated the defendant and had refused to permit his mother to see him. (*McGhee*, 154 Ill. App. 3d at 235-36, 507 N.E.2d at 34-35.) No youth officer was involved at anytime in *People v. Knox*, and police had, either knowingly or innocently, precluded defendant's mother from speaking with him at the police station where he was being held. (*Knox*, 186 Ill. App. 3d at 812-14, 542 N.E.2d at 913-14.) Rather than requiring an opportunity for a defendant to privately confer with an adult interested in his welfare prior to police questioning, *People v. McGhee* and *People v. Knox* illustrate that the absence of a youth officer during a juvenile defendant's questioning is but one factor to consider under the totality of the circumstances test in the instance where defendant had no prior opportunity to confer with such an interested individual. See *Knox*, 186 Ill. App. 3d at 815-16, 542 N.E.2d at 915.

Thus, the importance of determining whether, in fact, Woods was present during defendant's initial interview is directly related to whether, in fact, the police contributed to eliminating an opportunity for defendant to confer, prior to questioning, with an adult interested in his welfare by telling defendant's parents not to go to Area 3 for a time after his arrest. Both of those determinations, however, were matters for the trier of fact to decide on the basis of credibility and are outside of our consideration upon review. After considering all of the testimony regarding the circumstances of defendant's confession, we cannot conclude the trial judge's denial of defendant's motion to suppress was improper.

Defendant also argues that his pretrial motion to quash his warrantless arrest should have been granted on the basis that probable cause to arrest was not established.

Detective Smith testified regarding the existence of probable cause. Smith stated that, shortly after the shooting, he and other detectives were informed by uniformed officers that several individuals had been located who had information relating to the incident. Arrangements were made to transport those individuals to Area 3. Smith interviewed four or five of those individuals, including Rafael Hicks and Maurice Sikes, both of whom identified defendant as the offender. Hicks specifically related that he had attended the dance on November 21, 1986, had witnessed the fight following the dance, had heard a shot, and had seen defendant fleeing the scene immediately thereafter. Hicks also related that, earlier that night, he had seen defendant in possession of a pistol. Smith also stated that one of the individuals interviewed, possibly Hicks, pointed out the location of defendant's parents' home, where defendant was subsequently arrested.

Whether probable cause to support a warrantless arrest exists is a commonsense, practical question to be determined by the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Generally, probable cause exists when the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the individual arrested is responsible. (Ill. Rev. Stat. 1985, ch. 38, par. 107—2(1)(c); *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) To that end, Illinois courts traditionally consider as inherently credible those witnesses to criminal activity who assist police with intent to aid law enforcement efforts rather than for personal gain or payment. *People v. Adams* (1989), 131 Ill. 2d 387, 546 N.E.2d 561.

■ The information supplied to police by Sikes and Hicks was sufficient to establish probable cause to arrest defendant. At the time police arrested defendant, they knew that defendant had been seen earlier on the night of the shooting with a pistol, was present at the time of the fight and the shooting and, following the shooting, immediately fled the scene. We agree with the trial judge's determination that that information would lead a reasonable man to believe defendant committed the crime.

Last, defendant argues that the State presented insufficient evidence to sustain a murder conviction. At most, defendant contends, he should have been convicted of voluntary manslaughter based on self-defense. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).) Defendant cites his own testimony that he was initially provoked by Walker and that

he shot Walker believing Walker had his hand on a pistol in his pocket.

 However, both Reginald Jerome Hall and Brian Frazier established at trial that Walker did not have a weapon in his hand nor was he reaching into his coat at the time that defendant shot him. Both Hall and Frazier had witnessed the events leading to the shooting and recounted that, at the time he was shot, Walker had been attempting to defend himself against a crowd of youths who were hitting him. In short, the testimony of Hall and Frazier is sufficient to sustain defendant's conviction for murder. See *People v. Balfour* (1986), 148 Ill. App. 3d 215, 498 N.E.2d 547, *appeal denied* (1987), 114 Ill. 2d 548, 508 N.E.2d 730.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.