991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kenneth FISHER, Petitioner/Appellant,
v.
J.W. FAIRMAN, Respondent/Appellee.
 No. 92-1675.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 3, 1993.
Decided April 14, 1993.
 
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Kenneth Fisher petitions for a writ of habeas corpus, 28 U.S.C. § 2254, claiming that police officers forced him to confess and searched his car illegally. The district court denied the writ after finding the confession voluntary and the search issue precluded by Stone v. Powell, 428 U.S. 465 (1976). We affirm.
 
 I. BACKGROUND
 
 2
 On May 27, 1984, Chicago police officers discovered that Thelma Fisher had been murdered. After learning that Thelma had been with Kenneth Fisher and Johnny McGhee the night before, the officers talked with Fisher at the 13th District Station, where he was jailed on an unrelated theft charge. During their discussion, Fisher admitted that he had spent time with Thelma the previous night but denied killing her. The officers questioned Fisher from 1:00 p.m. until about 1:20 p.m., then transferred him to the Area Four Headquarters.
 
 
 3
 After leaving Fisher, the police located his car outside his family's home. The police observed blood on the car's hubcaps, fender, and trunk. Inside the car, the police noticed beer bottle caps and a bloodstained leather bracelet. At this time they requested the keys to the car from a member of the family. The police opened the trunk with the keys and found a detached stereo speaker.
 
 
 4
 The police interviewed Fisher again at 7:00 p.m. After a short period of questioning, Fisher admitted that:
 
 
 5
 [H]e, McGhee and the victim had been where the victim's body was found the evening before. The defendant claimed that he saw his marijuana tucked into the victim's waistband and that the two argued over it. During the course of the argument, defendant reached down, picked up a rock and hit the victim in the forehead causing her to fall. Next, defendant stated that McGhee got some stereo speaker wire and began to tie the victim up. McGhee then picked up a larger rock and struck the victim five or six times and then dropped the rock on her face. Defendant picked the rock up off her face. He noticed that the victim was wearing a studded leather bracelet that he had given her and he removed it from her hand. Then defendant and McGhee drove off.
 
 
 6
 People v. Fisher, 523 N.E.2d 1119, 1123 (Ill.App.), appeal denied, 530 N.E.2d 254 (1988). The police continued to question Fisher until 5:00 a.m. Id. at 1121; R. 126. Fisher's co-defendant, McGhee, confessed later in the evening.
 
 
 7
 Before trial, Fisher moved to suppress evidence, alleging that his confession was involuntary and that his car was illegally searched. After extensive fact-finding, the trial court rejected both claims, and the case proceeded to trial before a jury.
 
 
 8
 Following their convictions, the Fisher and McGhee each appealed and challenged the suppression decision. In McGhee's appeal, which was decided first, the appellate court reversed, finding McGhee's arrest illegal and his confession involuntary. People v. McGhee, 507 N.E.2d 33 (Ill.App.), appeal denied, 515 N.E.2d 120 (1987), and affirmed in Fisher's case. People v. Fisher, 523 N.E.2d at 1119. Thereafter Fisher petitioned the Illinois Supreme Court for review, and it was denied. Fisher next filed a petition for a writ of habeas corpus in federal district court, again challenging the confession and the search. The district court denied the writ without a hearing, and Fisher appeals.
 
 II. ANALYSIS
 
 9
 The district court properly denied Fisher's claims without a hearing because "the facts essential to consideration of the constitutional issues [were] already before the court." Matta-Ballesteros v. Henman, 896 F.2d 255, 258 (7th Cir.1990). Before making its decision, the district court obtained an extensive record from Fisher's suppression hearing. This record conclusively demonstrated that Fisher's confession had been voluntary and that his Fourth Amendment claims did not warrant federal review.
 
 A. THE CONFESSION
 
 10
 When a federal court reviews a voluntary confession case in its habeas corpus jurisdiction, it does not extend state court findings the deference generally afforded to those findings. Miller v. Fenton, 474 U.S. 104, 112 (1985). Federal courts decide the ultimate issue of voluntariness de novo,[1] examining the "totality of the circumstances" to determine if the confession was "the product of an essentially free and unconstrained choice." Pharr v. Gudmanson, 951 F.2d 117, 120 (7th Cir.1991). This court must, however, defer to the state's determination of the underlying facts--those "of the 'who did what to whom, when, where, and why' variety," see 28 U.S.C. § 2254(d). Arizona v. Fulminante, 111 S.Ct. 1246, 1252 (1991); Weidner v. Thieret, 866 F.2d 958, 961 (7th Cir.1989).
 
 
 11
 1. Factual Findings.
 
 
 12
 We thus turn to the state courts' extensive findings of fact. The state appellate and trial courts found that "the defendant was properly advised of his constitutional rights; that at the time of the alleged occurrence, he was married and an expectant father; that he was not under any mental or physical disability to understand communication; that he was not beaten, coerced or tricked into making any statements; and that he had previous experience with the criminal justice system." Fisher, 523 N.E.2d at 1123-24. The trial court also found that Fisher failed to invoke his right to an attorney until his final interview, which took place at about 4:00 a.m. The court, consequently, suppressed a written statement taken after the request but admitted Fisher's earlier statements, including his 7:00 p.m. confession.
 
 
 13
 Fisher raises two challenges to the state court findings: (1) that the state did not provide him a full and fair hearing, 28 U.S.C. § 2254(d), and (2) that the state's findings are unsupported by the record. 28 U.S.C. § 2254(d)(8). We will consider each contention in turn.
 
 
 14
 In support of his first contention, Fisher cites a recent law review article. See Myron W. Orfield, Deterrence, Perjury, and the Heater Factor: An Exclusionary Rule in the Chicago Criminal Courts, 63 U.Colo.L.Rev. 75 (1992). The relevant portions of the article, which are based on a survey of twelve Cook County judges, fourteen Cook County public defenders, and fourteen state's attorneys, indicate that Cook County courts are generally unwilling to suppress evidence. Although this article certainly shows some deficiencies in the Cook County system as a whole, Fisher has never proven that these deficiencies actually affected his case. In Fisher's case, the state trial court heard extensive testimony then rendered a logical, well-detailed decision. This decision was reviewed and affirmed by the Appellate Court of Illinois, a court not criticized by the article. If Fisher intended to discredit the findings of those courts, he must provide more than a mere survey of forty judges and attorneys.
 
 
 15
 Fisher also argues that the findings are unsupported by the record. He first challenges the courts' findings about his personal characteristics--his age, emancipation, intelligence, and experience in the criminal justice system. We disagree and hold that there is ample support in the record for each of the courts' findings. Fisher's responses at the suppression hearing support the district court's conclusions about his intellectual and communicative capabilities. Fisher answered his attorney's questions appropriately then provided intelligent, consistent answers to the State's cross-examination. Fisher also had "experience in the criminal justice system." The record shows that Fisher had been previously arrested for theft and that he had served a term of juvenile probation. Finally, the evidence demonstrates that Fisher was married at the time of the interrogation, which unquestionably sustains the finding that Fisher was "emancipated." Under Illinois law, a married person under eighteen is by definition emancipated. See Ill.Rev.Stat. ch. 23, para. 2053; Ill.Rev.Stat. ch. 38, para. 81-63.
 
 
 16
 Fisher's claims about his emancipation and his criminal experience demonstrate some confusion about the legal and factual issues involved in this case. Fisher attacks the finding of emancipation by arguing that he was immature at the time of his interrogation and challenges the finding of experience by claiming that he was never interrogated about previous crimes. Instead of attacking the judge's obviously correct findings as erroneous, Fisher might have urged that we give minimal weight to these factors in our de novo review. Fisher's emancipation and criminal experience may carry little weight in our balance in light of his dependence upon his mother and his minimal exposure to police interrogation.
 
 
 17
 From our review of the record we have found no support for Fisher's allegation that he was beaten and coerced. Although Fisher and his family testified that he was bruised after his interrogation, the court found stronger evidence supporting the police officers' denial of physical abuse. That evidence included the credible testimony of a jail paramedic as well as a photograph of Fisher taken shortly after the alleged beatings showing no bruises.
 
 
 18
 Finally, the record supports the trial court's findings about Fisher's requests for an attorney.[2] Although Fisher testified that he had requested counsel repeatedly, police officers claimed that Fisher first requested counsel during his final interview. The trial court, which heard the testimony of all the witnesses, was free to credit the officers' testimony over Fisher's. See Ray v. Duckworth, 881 F.2d 512, 517 (7th Cir.1989) (state court determinations about credibility are conclusive if fairly supported by the record).
 
 
 19
 Fisher also asks this court to make supplementary findings. He alleges, initially, that he was intoxicated the night of the murder and that he was he was suffering from the after-effects of that intoxication at the time of his confession. However, because Fisher confessed at 7:00 p.m. the night following the murder, this court may presume that any effects of the intoxication had worn off before the confession. See Andersen v. Thieret, 903 F.2d 526, 531 (7th Cir.1990); Mikel v. Thieret, 881 F.2d 733, 739 (7th Cir.1989).
 
 
 20
 Fisher further alleges that he was physically exhausted at the time of his confession. Although he claims that he was "repeatedly questioned" from 1:00 p.m. until 5:00 a.m., the evidence shows that Fisher participated in only one short interview before he confessed. Fisher, 523 N.E.2d at 1120. At 1:00 p.m., Fisher, who was already in jail on an unrelated theft charge, answered questions in the jail's hallway for twenty minutes. R. 24-27. During that interview, Fisher denied any involvement in Thelma Fisher's murder and returned to his cell while the police questioned other witnesses. At 7:00 p.m., the police again summoned Fisher, and this time he confessed to the murder. Id. Thus, although Fisher remained in the interrogation room until 5:00 a.m., we are of the opinion that his initial confession at 7:00 p.m. was tainted neither by physical nor mental exhaustion.
 
 2. De Novo Review of the Facts
 
 21
 The record, therefore, contains little evidence of an involuntary confession. Fisher failed to establish that he was under duress or that he could not understand questions posed by the police. Fisher proved only his sexual irresponsibility and his dependance upon his mother. These traits certainly do not distinguish him from an ordinary seventeen-year old, and absent mental defects or improper coercion by police, seventeen-year-olds are assumed capable of confessing. Compare United States ex rel. Riley v. Franzen, 653 F.2d 1153, 1163 (7th Cir.), cert. denied, 454 U.S. 1067 (1981) (confession by seventeen-year-old valid), with Weidner, 866 F.2d at 959, 964 (confession by an illiterate, brain-damaged seventeen-year-old warrants further investigation by district court).
 
 
 22
 Fisher disputes his capability of providing a voluntary confession, citing his co-defendant's appellate case as authority. McGhee, 507 N.E.2d 33. Fisher criticizes the Appellate Court of Illinois's disparate rulings in cases he considers nearly identical. Fisher, however, ignores crucial distinctions between the cases, such as McGhee's longer interrogation and his status as a juvenile. Both McGhee's age and the period of his interrogation were central to the reversal of his case. Id. at 38. Fisher also claims that, by finding McGhee's testimony involuntary, the appellate court implicitly rejected the credibility of the testifying officers. If the officers were not credible, Fisher argues that we must reject their testimony en toto. This argument, however, conflicts with Bae v. Peters, 950 F.2d 469, 474 (7th Cir.1991), a case holding that a court may logically consider parts of a witness's testimony true and other parts false.
 
 
 23
 We affirm the district court's finding of voluntariness.
 
 B. THE AUTOMOBILE SEARCH
 
 24
 Fisher also challenges the warrantless search of his car. The district court dismissed this claim under Stone v. Powell, 428 U.S. 465 (1976), which holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Id. at 482. A petitioner has fully and fairly presented his claim if (1) he has informed the state court of the relevant facts and argued that those facts amount to a conditional violation and (2) the court has appropriately analyzed the constitutional claims. Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir.1992).
 
 
 25
 Under this standard, Fisher had a full and fair opportunity to litigate the issues relating to the search. At his suppression hearing, Fisher argued that the police had illegally searched the interior and exterior of his car, but the court rejected his claim, holding:
 
 
 26
 [T]he right to take swabs or paint samples from an auto suspected as being the instrumentality of a hit and run, is certainly no violation of the defendant's Constitutional rights when the vehicle is on a public way....
 
 
 27
 I also, specifically, find that someone with authority to exercise control over that vehicle, that is, the custodian of keys, voluntarily made those keys available to the police officers and gave permission....
 
 
 28
 These holdings comport with Cardwell v. Lewis, 417 U.S. 583, 592 (1974), which allows police officers to search the exterior of a car without a warrant, and United States v. Matlock, 415 U.S. 164, 173 (1974), which allows warrantless searches upon consent from a person with authority over the property.
 
 
 29
 In spite of trial court's complete and through analysis of the search, Fisher contends that the state courts failed to provide a full and fair opportunity to litigate the question because the state appellate court never discussed the search. This argument ignores this court's decision in United States ex rel. Barksdale v. Sielaff, 585 F.2d 288, 292 (7th Cir.1978), cert. denied, 441 U.S. 962 (1979), a case holding that consideration by either a state trial court or a state appellate court bars federal review.
 
 III.
 
 30
 Finding no error in the district court's dismissal of this petition, we AFFIRM.
 
 
 
 [1]
 Although it is clear that district courts must review voluntariness de novo, the standard of appellate review over the district court's decision is less certain. In Sotelo v. Indiana State Prison, 850 F.2d 1244, 1247 (7th Cir.1988), this court held that its review is plenary, but we questioned this conclusion in Weidner v. Thieret, 866 F.2d 958, 961 (7th Cir.1989). We decline to resolve this problem today because, as in Weidner, "the issue here is not whether [the district court] made a correct determination on the basis of subsidiary facts found by the state court; it is what those facts are." Id
 
 
 [2]
 In state court, Fisher alleged that he never received his Miranda warnings. After hearing his testimony, the trial court concluded that the warnings had been properly administered. We must accept this finding as true because Fisher does not challenge it in this appeal